GRAF'S BEVERAGES OF ILLINOIS, INC., Plaintiff-Appellee, *v.* F. WARREN TAUBER, JR., d/b/a Brian's Foods, *et al.*, Defendants-Appellants.

Second District   No. 76-292

Opinion filed August 2, 1977.

Angelo Ruggiero, of Chicago, for appellants.

Ronald O. Roeser, of Imming & Faber, of Elgin, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from the order of the trial court denying the petition to vacate a judgment under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72).

By pretrial stipulation the issues in this appeal are limited to the following:

(1) Did the trial court exercise its discretion?

(2) Did the trial judge abuse his discretion in reference to the following:

(a) Does the record show the appellant exercised due diligence?

(b) Does the record show the appellant had a meritorious defense?

(3) Does the law as applied to the record in this proceeding authorize a judgment for punitive damages?

The defendant, F. Warren Tauber, Jr., (hereinafter referred to as Tauber), on August 19, 1975, ordered some $6,500 worth of beverages from Graf's Beverages (hereinafter referred to as Graf). Two days later Tauber ordered another $6,500 worth of beverages. Both orders were delivered promptly but were not paid for at the time of delivery. On August 22, 1975, Tauber ordered a third truckload of beverages from Graf, but Graf became suspicious about the unusually large quantity of beverages being ordered by Tauber and sent someone out to investigate. The investigator discovered that Tauber had been ordering exceedingly large quantities of food stuffs from his suppliers and he was apparently contemplating a "going out of business" sale. A few days later the police informed Graf's investigator that the contents of the store in question, which Tauber operated under the name of "Brian's Foods," had been loaded onto trucks and moved on the night of August 26, 1975, to an undetermined location. None of the debt owed to Graf for the beverages in question has been paid.

Graf filed a complaint against Tauber on October 20, 1975, and he was duly served on October 27, appearance being required by November 26. The complaint was in two counts—count I for $12,370 for goods sold and delivered and count II for $10,000 punitive damages for fraudulently

inducing delivery of goods the defendant had no intention of paying for.

On Friday, November 28, 1975, Tauber's counsel, Angelo Ruggiero, mailed an appearance and jury demand on Tauber's behalf to the Kane County circuit court which was received and filed by the clerk on December 1, 1975. On January 22, 1976, no answer or other pleading having been filed on behalf of Tauber, Graf's attorney moved for default judgment against Tauber in the amount of $22,370. He did not serve a notice of said motion on Tauber's attorney. The judgment order, entered the same day, recited that default judgment was entered on the plaintiff's motion "for failure to appear or otherwise plead in the instant case within the time required to do so." The amount of the judgment entered was $22,370, in accordance with the prayer of the complaint, this including $10,000 punitive damages.

On March 12, 1976, the plaintiff filed a citation to discover assets which was duly served on Tauber and he not appearing, a rule to show cause was issued. Defendant Tauber by substituted attorney, Thomas Burke, thereupon filed a motion to present an affidavit signed by Tauber reading as follows:

> "1. That my defense to this litigation is that I do not owe the money in any wilful and wanton manner, in an intentional manner or any other way to deprive anybody so that punitive damages be imposed against me and that the original debt was not my obligation but the obligation of others if in fact such obligations exist."

At the same time defendant's attorney presented a motion to open the judgment and a proposed "Answer" (apparently to the complaint). Plaintiff Graf opposed the motion on the ground that the proposed answer, being late, was a nullity and the affidavit tendered in support of the petition to open the judgment under section 72, did not show a meritorious defense and therefore did not establish any grounds for granting the petition. The court rejected the motion to open the judgment, affirmed the default judgment and granted the rule to show cause. This appeal is from the trial court's order denying the motion to open the judgment and the motion to file a petition under section 72 of the Civil Practice Act and confirming the default judgment entered on January 22, 1976.

Tauber argues on this appeal that the default judgment was improperly granted because he had filed an appearance which, while not timely, was only technically in default, having been mailed within two days of its due date and although not received for filing until December 1, a weekend intervened and actually it was only nominally late. In any event, Tauber contends, the appearance being on file showing his attorney's name and

address, it was entirely improper for the plaintiff's attorney to have moved for a default judgment without notifying the defendant of his proposed motion and likewise improper for the trial court to have granted a default judgment, without notice having been given to the opposing attorney of record.

In answering this argument, Graf's attorney says that he was not required to notify Tauber's attorney, Ruggiero, of the intended motion because Ruggiero did not send him a copy of his appearance and he was not notified that Ruggiero was representing Tauber. This point is made more obscure by the fact—whether pure coincidence or a logical part of the picture—that one Robert D. Floss residing in the same village as Tauber—LaGrange—was also in someway involved as a defendant and Floss was sued, apparently in a separate complaint and was served with summons on November 26, 1975. Floss, however, was not represented by Ruggiero, Tauber's attorney, but was represented by attorney Curcio. Curcio had the same address as Ruggiero—134 North LaSalle Street, Chicago—but had a different telephone number. Curcio filed an appearance on Floss' behalf on December 11, 1975, which was timely.

While attorney Roeser, acting on behalf of Graf, did not notify Ruggiero of the intended motion for default judgment against Tauber filed on January 16, he did notify Curcio on that date. Neither the style of the motion nor the motion itself indicates that it was intended to be a notice to Floss, rather the notice asks for a judgment against Warren Tauber and while attorney Roeser contended at oral argument that he did not notify Tauber because Tauber's attorney, Ruggiero, had not furnished him with a copy of his filed appearance and therefore he had no obligation to notify him, it seems likely from the file that attorney Roeser believed he was notifying Tauber's attorney when he sent the notice to Curcio. This seems probable because Roeser later sent a separate notice to Robert Floss notifying him of an intended motion for default judgment which he would make on April 6, 1976 (the notice having been sent directly to Floss because in the meantime Curcio had withdrawn as Floss' attorney). On the other hand, following his notice of motion to attorney Curcio, attorney Roeser, on behalf of Graf, appeared as per the notice and asked for a default judgment only against Tauber, although both Tauber and Floss were in default at that time.

■■ If we accept attorney Roeser's statement that attorney Ruggiero failed to send him a copy of the appearance he filed on behalf of Tauber, then attorney Ruggiero must bear at least a part of the blame for the confusion caused by the two attorneys sharing the same address while representing different defendants in the same lawsuit. In any event, however, Tauber was clearly in default not only for having failed to file a

timely appearance but for failure to file any responsive pleadings either by way of answer or motion, within the time required. Supreme Court Rule 181(a) provides that:

" * * * If the defendant's appearance is made in some other manner [than by filing a motion], nevertheless his answer or appropriate motion shall be filed on or before the last day on which he was required to appear." (Ill. Rev. Stat. 1975, ch. 110A, par. 181(a).)

The defendant failed to comply with this rule and was properly defaulted on January 22, 1976, which was almost two months after the 30-day period for answer or motion expired. Moreover, under section 50.1 of the Civil Practice Act the clerk of the court is required to notify the defendant by post card of a default judgment. There is no reason to suppose that this was not done in this case. While, therefore, it is possible that attorney Ruggiero was not aware of the notice of motion for default judgment regarding *his* client which was sent to his office, but addressed to the co-defendant's attorney, he was nevertheless properly defaulted. We are of the opinion that the trial court did not abuse its discretion in so holding.

■■ ■ We have, nevertheless, to consider whether, having been defaulted, the circumstances are such that the judgment should not stand as a matter of substantial justice. Here, again, the trial court does not have unlimited discretion. As was said in *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613, "one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances." In implementing this section of the Civil Practice Act, however, the courts have uniformly required that the petitioner show he has been reasonably diligent in protecting his rights (*Lamere v. Vaughn* (1975), 34 Ill. App. 3d 261; *Wayne v. Thompson* (1974), 18 Ill. App. 3d 908; *Trisko v. Vignola Furniture Co.* (1973), 12 Ill. App. 3d 1030) and that he has a meritorious defense to the claim on which the judgment is based. *Limar-Pinehurst, Inc. v. Welter* (1976), 38 Ill. App. 3d 800; *Berkson v. Quality Beauty Supply Co.* (1976), 36 Ill. App. 3d 877; *Aetna Casualty & Surety Co. v. Sanders* (1973), 15 Ill. App. 3d 573.

■■ ■ The existence of a meritorious defense is, of course, indispensable regardless of the petitioner's diligence for the courts will not grant a section 72 petition merely to give the petitioner a second chance if he did not merit relief in the first place. In the case before us we find no showing of a meritorious defense, whatever the defendant's due diligence in presenting his petition. Tauber's affidavit merely stated that "the original debt was not my obligation but the obligation of others," with nothing more to qualify or reinforce this gratuitous statement. This does not, in our opinion, present a meritorious defense. There is no mention of

how, why or in what manner, or under what circumstances the defendant was charged with "the debt of others," nor any information as to the identity of such others or their relationship to the transaction in question. This is hardly more than a conclusion of law and is far short of a meritorious defense. Moreover, at oral argument plaintiff's counsel stated that he had seen the defendant's tendered "Answer" to the complaint and that it contained only denials of the allegations of the complaint and did not establish an affirmative defense explaining the defendant's claim that the debt was not his. We do not have the tendered "Answer" before us, but plaintiff's counsel's statement in this regard was not contradicted by counsel for Tauber. Only a detailed explanation would be convincing and the defendant's affidavit was completely lacking in that regard. We see no basis in this affidavit for granting the petition to open the judgment.

■■ However, we are not in accord with that part of the trial court's judgment allowing punitive damages in the amount of $10,000. Illinois does not favor punitive damages for breach of contract. (*Illinois Sterling, Inc. v. KDI Corp.* (1975), 33 Ill. App. 3d 666; *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339; *Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623.) In rejecting a claim for punitive damages in *Alsip Homebuilders, Inc. v. Shusta* (1972), 6 Ill. App. 3d 65, 69, the court commented on the rationale of the rule, saying:

> "The theory behind this rule rests upon a distinction drawn between compensation and punishment. If the general purpose underlying the law of damages is to promote security and prevent disorder, as Corbin [5 Corbin, Contracts §1077 (1964)] points out, and breaches of contract do not cause as much resentment or other physical or mental discomfort as do wrongs called torts or crimes, then the remedies needed to prevent breaches of contract and satisfy the injured party are not as severe as those needed to punish the tort feasor or criminal."

This is the general rule in other jurisdictions as well. See *Alsip Homebuilders, Inc. v. Shusta,* cited above; 22 Am. Jur. 2d *Damages* §245 (1965).

■■ Moreover, the plaintiff here insisted on a default judgment which prevented presentation of any evidence to establish the exact circumstances surrounding the breach of contract. The plaintiff cannot have it both ways. If he stands on his default judgment he thereby prevents the defendant from attempting to deny, explain or mitigate the allegations of the complaint charging false and fradulent conduct. The plaintiff did not allow the case to be heard on its merits and while he was technically within his rights in taking that position, he did not thereby establish false and fraudulent acts on the part of the defendant. In

awarding punitive damages, therefore, we feel the trial court was in error and abused its discretion.

The judgment of the trial court is affirmed as to the denial of the petition to open the judgment and as to the judgment awarded under count I of the complaint and reversed as to the award of punitive damages under count II.

Affirmed in part; reversed in part.

SEIDENFELD and GUILD, JJ., concur.