BONANZA INTERNATIONAL, INC., Plaintiff-Appellee, v. MAR-FIL, INC., *et al.*, Defendants-Appellants.

Second District    No. 83—994

Opinion filed November 9, 1984.

Kenneth A. Abraham & Associates, of Darien, for appellants.

John R. Wienold, of Puckett, Barnett, Larson, Mickey & Wilson, of Aurora, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

This appeal by the defendants, Mario Luperini and Mar-Fil, Inc. (hereinafter Mar-Fil), is from an order of the circuit court of Du Page County denying their petition to vacate a default judgment entered against them and in favor of the plaintiff, Bonanza International, Inc. (hereinafter Bonanza).

Bonanza brought this action originally by complaint filed December 21, 1982. According to the complaint, on November 10, 1977, Luperini and Mar-Fil entered into a franchise agreement with Bonanza regarding the operation of a Bonanza Sirloin Pit restaurant in Darien. The agreement required Luperini and Mar-Fil to pay Bonanza a "royalty/service fee" equal to 4.8% of the restaurant's gross weekly receipts in return for, among other things, the right to use Bonanza's trademarks and service marks. The complaint alleged that such fees had not been paid from February 1, 1981, through December 31, 1981, resulting in a total deficiency of $32,062.71, and that an account had been stated in that amount which, in a letter dated December 28, 1981, Luperini and Mar-Fil had agreed to pay. Judgment was sought in that amount for breach of contract and account stated.

Luperini and Mar-Fil were both served with the complaint and a summons on January 4, 1983. Neither defendant filed an appearance or other pleading, however, and on March 1, 1983, Bonanza, without notice to the defendants, filed a motion for default judgment in the amount of $32,062.71 plus costs. On March 14, 1983, the court entered an order of default and continued the case for a hearing on the

amount of damages. The defendants were not given notice of said hearing which was held on April 18, 1983.

At the hearing Bonanza presented the court with an affidavit of Gregg Simmons, director of credit and collections for Bonanza. In the affidavit Simmons stated that he was "personally familiar with the [franchise] agreement and all correspondences between [Bonanza] and Mar-Fil, Inc. and Mario Luperini and that all sums due under said agreement as of January 6, 1982, are $32,062.71." The affidavit further stated that the account stated in that amount "is accurate to this date [April 14, 1983]." Based on this affidavit, the court entered judgment against the defendants in the amount requested plus costs.

Two days later a notice of default judgment was prepared. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1302.) The space for the address of the defendants was left blank, and it appears that the notice was never sent.

On June 30, 1983, Bonanza served Luperini and Mar-Fil with citations to discover assets in order to satisfy the judgment previously entered. The citations were returnable August 1, 1983. On that date an attorney appeared on the defendants' behalf and filed a petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) to vacate the default judgment, accompanied by an affidavit of Mario Luperini. The petition alleged that the defendants had a meritorious defense "in that the complaint was based on an affidavit which was inaccurate, if not fraudulent and that the amount due and owing was inaccurate due to setoffs which were omitted." The petition also alleged that the default judgment was entered without any lack of diligence on the defendants' part. In the accompanying affidavit, Luperini stated that he had been informed by John Boylan, president of Bonanza, that the debt had been cut in half because of consulting work done by Luperini and Mar-Fil for Bonanza. More specifically, the affidavit stated that Luperini and Mar-Fil assisted Bonanza in a study which was to have led to the development of a prototype restaurant based on the concept used by Maximillian's Restaurant in Darien. Bonanza allegedly spent hours reviewing architectural plans, menus, employee training programs, and food preparation techniques, and taking photographs and measurements of Maximillian's Restaurant. Luperini also averred that he failed to respond to the complaint and summons because Boylan told him, during a telephone conversation shortly after the suit was filed, that Bonanza would not pursue the case, and that Luperini did not need to file a defense or even consult an attorney. According to the affidavit, Luperini did not realize there was a judgment in the case until he was

served with the citation to discover assets.

The court entered an order on August 1, 1983, staying the proceedings under the citations to discover assets, granting Bonanza 21 days to respond to the petition to vacate, and setting a hearing on said petition for August 29, 1983.

Bonanza did not file an answer or other pleading directed to the petition to vacate, but did file a counteraffidavit of John Boylan. In the affidavit Boylan admitted that he and Don Thomson of the board of directors of Bonanza went to visit Luperini and to see Maximillian's Restaurant on June 14, 1982. Maximillian's had previously been operated by Luperini and Mar-Fil as the Bonanza restaurant which was the subject of the lawsuit. The purpose of the trip was to observe the concept of Maximillian's Restaurant because Bonanza was in the process of developing an Italian restaurant at that time. Boylan also stated that Thomson and he agreed that, because of Luperini's cooperation in showing them the concept, that the debt owed to Bonanza "would be reduced *** to the sum of $20,000 if the payment was forthcoming." According to Boylan, he instructed Gregg Simmons to confirm this arrangement with Luperini by letter.

Finally, Boylan denied that he ever told Luperini that the subsequent lawsuit would not be pursued, that Luperini did not have to file a defense, or that it was unnecessary for him to consult with an attorney.

At the hearing on the petition, no other evidence was introduced; only arguments were heard. The matter was taken under advisement, and the court subsequently entered an order denying the petition to vacate the default judgment. The court found that the petition to vacate and the Luperini affidavit failed to disclose, factually, fraud on the part of Bonanza; failed to set forth, factually, a meritorious defense; and failed to disclose, factually, diligence on the part of Luperini or Mar-Fil. The court also found that Bonanza had not acted unfairly or unreasonably.

A petition under section 2—1401 to vacate a default judgment generally must set forth facts showing the existence of a meritorious defense and the exercise of due diligence on the part of the petitioner in presenting both a defense to the lawsuit and the petition to vacate. (*American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 400 N.E.2d 102.) The petition generally must show that through no fault or negligence of the petitioner, a meritorious defense was not presented to the trial court. (*Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25.) One of the guiding principles, however, in the administration of section 2—1401 relief is that the petition invokes the equi-

table powers of the court, which should prevent enforcement of a judgment when it would be unfair, unjust or unconscionable. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253; *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348.) Under such circumstances, just and good conscience may require that a judgment be vacated even though there may be a lack of due diligence. *Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 425 N.E.2d 1344; *Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 329 N.E.2d 376.

Although a section 2—1401 petition is filed in the same action in which the judgment it seeks to vacate was entered, it is not a continuation thereof. The petition is, in fact, a new action and is subject to the usual rules of civil practice. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.) Accordingly, where the respondent fails to file a responsive pleading, the facts properly alleged in the petitioner's affidavit are not contradicted and must be taken as true. (*Windmon v. Banks* (1975), 31 Ill. App. 3d 870, 335 N.E.2d 116.) Where a response is made to the section 2—1401 petition which raises a genuine dispute as to a material issue of fact, an evidentiary hearing is ordinarily required. *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 333 N.E.2d 659.

Finally, it should be noted that a section 2—1401 petition is initially addressed to the sound discretion of the trial court, and that its decision on the matter should be reversed only in the case of an abuse of discretion. *Beno v. DeBoer Asphalt Paving Co.* (1983), 114 Ill. App. 3d 871, 449 N.E.2d 1021.

■ In the instant case, we believe that the petition to vacate the default judgment and the accompanying affidavit adequately set forth a meritorious defense in the nature of a partial accord and satisfaction. The petition alleges that the amount of the debt stated in the complaint was inaccurate because setoffs were omitted. The Luperini affidavit stated that John Boylan, the president of Bonanza, had informed Luperini that the debt had been cut in half because of consulting work performed for Bonanza by Mar-Fil and Luperini. The affidavit detailed the nature of that consulting work and explained that it was done to help Bonanza develop a prototype restaurant similar to Maximillian's Restaurant. These averments adequately pleaded a defense in the nature of a partial accord and satisfaction. (See *A. & H. Lithoprint, Inc. v. Bernard Dunn Advertising Co.* (1967), 82 Ill. App. 2d 409, 226 N.E.2d 483. Compare *Graf's Beverages of Illinois, Inc. v. Tauber* (1977), 50 Ill. App. 3d 1047, 366 N.E.2d 150 (mere allegation

that the debt was not the defendant's obligation, but the obligation of others, without any further factual development, too conclusory to show meritorious defense).) Whether the defense of Luperini and Mar-Fil would ultimately prevail at trial is not at issue in the section 2—1401 proceedings. *Yorke v. Stineway Drug Co., Inc.* (1982), 110 Ill. App. 3d 1009, 443 N.E.2d 644.

In any event, the counteraffidavit filed by Bonanza substantially supported the section 2—1401 petition in this regard. In the affidavit, Boylan admitted that he and a member of Bonanza's board of directors traveled to visit Luperini and to visit Maximillian's Restaurant on June 14, 1982. The purpose of the trip was to observe the concept of the restaurant, since Bonanza was in the process of developing an Italian restaurant at that time. According to the affidavit, Boylan agreed that, because of Luperini's cooperation in showing the concept, the debt would be reduced to $20,000 if the payment was forthcoming. According to Boylan's affidavit, he informed Gregg Simmons of the arrangement.

The question of due diligence on the part of Luperini and Mar-Fil in presenting a defense to the lawsuit cannot be determined from this record. The petition and accompanying affidavit alleged facts which, if true, might have provided a reasonable excuse for the defendants' failure to answer or otherwise plead. The affidavit alleges that Boylan told Luperini that the lawsuit would not be pursued and that Luperini did not need to file a defense or even consult an attorney. In the counteraffidavit filed by Bonanza, however, Boylan averred that he did not tell Luperini those things. An evidentiary hearing would be required to resolve this disputed question of fact. *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253; *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 333 N.E.2d 659.

It appears that there was due diligence in filing the petition, since it was filed on the return date of the citations to discover assets, and it is undisputed that Luperini was not informed of the default judgment until he was served with the citations about a month before their return date.

■■ Even though one of the elements of the section 2—1401 petition is in dispute, the question of due diligence in presenting a defense to the lawsuit, this cause will not be remanded for an evidentiary hearing. It is our opinion that, even in the absence of due diligence in responding to the complaint, equity, justice and good conscience would require that the default judgment be vacated. As noted above, the petition adequately showed a meritorious defense to the original lawsuit in the nature of a partial accord and satisfaction. If

this defense would be vindicated at trial, the conduct of Bonanza in the original lawsuit would be called into question. At the hearing on the question of damages, Bonanza presented an affidavit of Gregg Simmons to the effect that the account stated of $32,062.71 was "accurate to this date [April 14, 1983]." Yet, if the defense would prevail at trial, Bonanza would have known that the account stated had been substantially reduced. Such conduct on the part of Bonanza would impugn the integrity of the original lawsuit. See *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348.

Moreover, it is undisputed that Bonanza waited more than 30 days after the default judgment to commence citation proceedings. Such conduct, although not enough in itself to render a default judgment unfair or unconscionable, has been held to cast a cloud on the proceedings because the standards for vacating a default judgment within 30 days of its entry are less stringent than after that period has elapsed. *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348; *Sidenstricker v. Dobbs* (1982), 110 Ill. App. 3d 620, 442 N.E.2d 924.

As stated in *Eastman Kodak Co. v. Guasti* (1979), 68 Ill. App. 3d 484, 386 N.E.2d 291, in ruling on a petition to vacate a default judgment, courts should proceed within the framework of the legal philosophy that litigation should be determined on its merits, if possible, and according to the substantive rights of the parties. Rights should be determined by default only as a last resort. In cases such as this, the law, if overcharged with technical severity, can but lead to oppression, and an ultimate defeat of the law itself.

Under the circumstances of this case, considering the showing of a meritorious defense to the original lawsuit, and the conduct of the plaintiff discussed above, we believe justice and good conscience require that the default judgment be vacated. The decision to the contrary by the trial court amounted to an abuse of discretion. Accordingly, the order of the circuit court denying the defendants' petition to vacate the default judgment is reversed, and this cause is remanded with directions that an order be entered granting the defendants a reasonable period of time in which to answer or otherwise plead with respect to the original complaint.

Reversed and remanded with directions.

UNVERZAGT and LINDBERG, JJ., concur.