MID-AMERICA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff and Counterdefendant-Appellant, v. LIBERTY BANK, Defendant and Counterplaintiff-Appellee (William J. Callahan *et al.*, Defendants and Counterplaintiffs; West Suburban Bank, Defendant).

Second District   No. 2—89—1355

Opinion filed October 31, 1990.

996

Patrick J. Williams, of Connolly, Ekl & Williams, P.C., of Clarendon Hills, for appellant.

Richard L. Lucas and William E. Hale, both of Richard L. Lucas & Associates, Ltd., of Addison, Arnstein & Zeller, of Skokie, and Guerard, Kalina, Musial, Ulrich & Varchetto, of Wheaton, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Liberty Bank (Liberty), a junior lienholder of a property in Du Page County, defaulted in a foreclosure action brought by the senior lienholder, La Salle Bank of Lisle (La Salle). As a result, a junior lienholder in third position behind Liberty who did not default, Mid-America Federal Savings and Loan Association (Mid-America), moved up to second position. Following a sheriff's sale where the property was purchased by a nonparty, the trial court granted Liberty's motion to vacate its default pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401), ruling that Liberty had no claim to the property but could recover from Mid-America to the extent that its lien was superior to Mid-America's.

Mid-America appeals, arguing that the section 2—1401 petition should not have been granted because (1) section 2—1401(e) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401(e)) bars relief when the property has been purchased by a *bona fide* purchaser; and (2) section 2—1401 relief is improper where Liberty failed to demonstrate due diligence. For the reasons stated below, we reverse.

For a proper understanding of the issues, it is necessary to set out in detail the sequence of court proceedings involving this property.

Mid-America was the first party to initiate foreclosure proceedings on the property on September 18, 1986. It did not name La Salle or Liberty, and they did not become parties to the proceedings. Mid-America obtained a foreclosure judgment for $57,985 on April 16, 1987. The judgment stated that nonparties, La Salle and Liberty, held superior interests.

On December 28, 1987, Liberty entered an appearance in the cause brought by Mid-America. On April 19, 1988, Liberty answered Mid-America's complaint and filed a counterclaim of foreclosure against Mid-America and La Salle, asserting a lien interest of $45,864.

On May 13, 1988, La Salle filed an answer to Liberty's complaint in which it asserted a superior lien interest for $20,398. On August 12, 1988, La Salle filed a counterclaim of foreclosure against Mid-America and Liberty. La Salle served Liberty by serving its attorneys of record, Arnstein & Zeller.

On September 1, 1988, Mid-America proceeded to a sheriff's sale on its foreclosure judgment and made the only bid at $67,062. A certificate of sale was filed September 21, 1988.

On November 3, 1988, La Salle gave notice that it would seek default against Liberty and Mid-America. Notice to Liberty was sent to Richard L. Lucas and Associates, Ltd. Karen Earley, counsel for La

Salle, stated in an affidavit that she sent notice of the motion to Richard L. Lucas & Associates, Ltd., based on that firm's representations that it was handling the matter for Liberty. This firm has not denied that it was handling the matter at this time, though it was not at this time the attorney of record. William Hale, an attorney with Richard L. Lucas & Associates, Ltd., stated in an affidavit that he had not received notice of the motion for default.

On November 16, 1988, a default order was entered against Liberty on La Salle's counterclaim. On November 21, 1988, notice of this order was sent by the court to Liberty's attorneys of record, Arnstein & Zeller. La Salle's motion for default had also originally stated that it sought a default judgment against Mid-America; however, Mid-America was not defaulted. The default order had Mid-America's name crossed off.

At La Salle's prove-up hearing on December 13, 1988, Mid-America asserted its interest from the previously entered foreclosure judgment and sheriff's sale. Mid-America also told the court that it intended to obtain La Salle's interest by assignment. The trial court determined that Mid-America's prior judgment did not have to be reflected in La Salle's foreclosure judgment since Mid-America held a certificate of sale subject to La Salle's lien. Thus, a foreclosure judgment that included only La Salle's interest was entered December 13, 1988. The judgment provided that any surplus from the sale would be held subject to further court order.

On December 28, 1988, Liberty sent notice to Mid-America that it would seek default against it on January 5, 1989, for failing to answer its counterclaim. The attorney who signed this motion was from Richard L. Lucas & Associates, Ltd. On January 5, 1989, Mid-America responded with a motion to vacate technical default and for an extension of time to answer. It stated in the motion that it was not certain who was representing Liberty since the law firm of Arnstein & Zeller filed Liberty's counterclaim and Richard L. Lucas & Associates, Ltd., had not, according to the record, filed a substitute appearance or otherwise appeared. Mid-America was granted 28 days to respond to Liberty.

On January 30, 1989, Mid-America moved to correct the foreclosure judgment of December 13, 1988, *nunc pro tunc*, to reflect its interest as determined by its earlier foreclosure judgment. The trial court granted this motion and entered an order on January 30, 1989, that provided that Mid-America's judgment was included in the priorities of distribution behind La Salle.

On January 30, 1989, Mid-America filed an answer to Liberty's

counterclaim in which it denied that Liberty had a superior lien interest to Mid-America.

On February 14, 1989, Mid-America sent notice to La Salle and Liberty of a judicial sale of the property on February 28, 1989. Notice to Liberty was sent to Arnstein & Zeller. Notice was also posted on this date at the courthouse and sheriff's office, and notice was published once a week from February 2, 1989, to February 16, 1989.

On February 16, 1989, an order was entered allowing Richard L. Lucas & Associates, Ltd., to enter its appearance on behalf of Liberty. The order also set a briefing schedule for Liberty and Mid-America. On February 22, 1989, Mid-America filed an affirmative defense in which it asserted that Liberty made additional advances to the borrower after Mid-America recorded its mortgage.

On February 28, 1989, at 9 a.m. Liberty moved to enjoin a distribution of the proceeds from the sheriff's sale. This motion was denied. At 10 a.m. on February 28, 1989, a sheriff's sale was conducted, and the property was purchased by Martha and Dennis Poziombka for $99,000. On March 8, 1989, an order approving the sale and distribution was filed, and a certificate of sale was issued. The proceeds of the sale were split between the liens asserted in the two foreclosure judgments, leaving a surplus of $428.35.

On March 28, 1989, Liberty moved pursuant to section 2—1401 to vacate its default. The trial court initially denied the motion; however, on a motion to reconsider, it granted the motion, ruling that Liberty had a cause of action against Mid-America to the extent that it had a superior lien, though Liberty did not have any claim to the property.

■■ Before addressing the merits of Liberty's section 2—1401 petition, it is first necessary to address Mid-America's argument that section 2—1401(e) bars relief under this section. Section 2—1401(e) provides that, unless lack of jurisdiction appears affirmatively from the record, the vacation or modification of an order or judgment under this section does not affect the right, title or interest in property purchased by a person not a party to the action after the judgment and before the filing of the petition (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401(e)). This section bars a party from seeking relief against the property; however, it does not bar a party from seeking other relief that may be fashioned by the court. (*People ex rel. Wright v. Doe* (1962), 26 Ill. 2d 446, 453-54.) In this case, the trial court did not provide Liberty a right to relief against the property; it only allowed Liberty to seek relief against Mid-America. Thus, the remedy provided is not one barred by section 2—1401(e).

■■ Section 2—1401 provides a procedure by which a judgment

may be vacated after 30 days of its entry (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401(a)). A petition to vacate a judgment must set forth facts showing the existence of a meritorious defense and the exercise of due diligence in presenting a defense in the original action and in filing the section 2—1401 petition. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21; *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 717.) The granting of a section 2—1401 petition lies within the sound discretion of the trial court and may not be disturbed unless the trial court has abused its discretion. *Smith,* 114 Ill. 2d at 221.

█ To show due diligence, a petitioner must demonstrate a reasonable excuse for failing to act within the appropriate time frame. (*Smith,* 114 Ill. 2d at 222.) The petitioner must show that the failure to act was not a result of petitioner's fault or negligence, but the result of an excusable mistake. (*Smith,* 114 Ill. 2d at 222.) We find Liberty failed to exercise due diligence in presenting its defense in the original action and in filing its section 2—1401 petition.

Liberty was properly served with summons and a copy of La Salle's complaint. It offers no explanation for its failure to answer. For whatever reason, Liberty chose to pursue its rights through its own action against Mid-America, rather than respond to La Salle's complaint. This decision was a mistake, and an unreasonable one given the law pertaining to the effect of a foreclosure sale against properly joined junior lienholders.

> "A master's deed under a foreclosure sale, predicated upon proper and regular proceedings conveys to the grantee therein named all the title, estate and interest of every nature and kind, of the persons against whom the decree of foreclosure was rendered in and to the premises conveyed. Consequently, in a foreclosure proceeding to which all proper and necessary parties have been brought in, the purchaser acquires all the rights in the mortgaged premises which the mortgagor had at the time of the execution of the mortgage, entirely unaffected by the title or lien of purchasers or encumbrancers subsequent to the recording of the mortgage, or with notice." (*Kling v. Ghilarducci* (1954), 3 Ill. 2d 454, 461.)

When La Salle, the senior lienholder, made junior lienholders Liberty and Mid-America parties to its foreclosure action, Liberty's lien became vulnerable to the La Salle judgment, and when the La Salle judgment resulted in a sheriff's sale and the purchase by a nonparty, Liberty's interest, by virtue of its default, was terminated. Had Liberty simply responded to the La Salle action, it would have been able

properly to protect its interest.

■■■ This finding does not end our inquiry. A section 2—1401 petition invokes the equitable powers of the court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable. (*Smith*, 114 Ill. 2d at 225.) Where justice and good conscience may require it, a default judgment may be vacated even though the requirement of due diligence has not been satisfied. (*Smith*, 114 Ill. 2d at 225.) Since the trial court did not make a finding of due diligence, it is apparent that the court invoked its equitable powers in granting the petition. We find the trial court abused its discretion.

One of the excuses offered by Liberty was that it did not have notice of La Salle's motion for default. We note that the trial court determined notice was sent to Richard L. Lucas and Associates, Ltd. No one from this firm denies that it was representing Liberty at this time even though it had not yet filed an appearance. The attorney representing Liberty asserts, however, that he did not receive notice. Even if we accepted Liberty's assertion, we would not be persuaded that justice requires granting Liberty's petition.

Whether Liberty received actual notice of La Salle's default motion, we find Liberty received notice of the default itself and failed to exercise due diligence in vacating the default within 30 days pursuant to section 2—1301(e) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1301(e)) or in filing a section 2—1401 petition prior to the judicial sale.

Liberty acknowledges that it had notice of the default judgment when it states in its petition that it "elected" not to vacate the default judgment, choosing instead to pursue the cause against Mid-America. Notice of the default was sent pursuant to section 2—1302(a) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1302(a)) to Liberty's counsel of record, Arnstein & Zeller, on November 21, 1988. Liberty does not dispute this notice, but it does not acknowledge it either. Liberty's assertions demonstrate some confusion on this point. Liberty stated in its petition that notice of its default was not posted until January 11, 1989. The notice of January 11, 1989, however, did not refer to La Salle's judgment. It referred to defaults (not pertaining to Mid-America or La Salle) entered on Liberty's claim on January 6, 1989. Even if we accepted that Liberty did not have notice until January 11, 1989, Liberty acknowledges that this left it three days to vacate the default prior to the expiration of the 30-day period (assuming that the proper starting point is December 13, 1988). Liberty does not explain its failure to move within those three days.

Liberty also fails to explain why it did not file its section 2—1401

petition prior to the sheriff's sale. We realize Liberty did take some action immediately prior to the sale, but it took the wrong action. Liberty filed an emergency motion to enjoin distribution of the proceeds, asserting that it had a right to distribution of the proceeds prior to Mid-America. Though this motion was denied, it would have been ineffective even if granted. As already stated, Liberty's default followed by the purchase of a nonparty terminated its interest. Thus, after the sale, Liberty had no lien interest and no right to the proceeds. Liberty should have filed an emergency motion to enjoin the sale and a motion to vacate its default.

■ The trial court recognized that Liberty had no right to assert an interest against the property following the sheriff's sale, but decided that Liberty had a cause of action against Mid-America. This decision was an abuse of discretion. The trial court ruled that the *nunc pro tunc* order of January 30, 1989, was a nullity because the judgment relied upon to place Mid-America in second position, the foreclosure judgment of April 16, 1987, had no effect against Liberty. We agree that the April 16, 1987, judgment had no effect against Liberty, but we do not agree that this meant that Mid-America's interest could not be placed above Liberty's. The April 16, 1987, foreclosure judgment for Mid-America states that Liberty had a superior lien interest at that time; however, this did not create a judgment for Liberty as it was not a party. Furthermore, this judgment had no effect against the senior lienholder, La Salle. Thus, it was Liberty's responsibility to take the appropriate steps to protect its lien. Liberty filed its own foreclosure action, but it failed to recognize the effect that defaulting in La Salle's action could have on its lien. Mid-America, on the other hand, did not default on the La Salle action. It appeared and protected its lien by asserting its prior foreclosure judgment. Liberty's default enabled Mid-America to improve its position. The *nunc pro tunc* order reflecting Mid-America's interest was proper; it accurately reflected the fact that Mid-America had not defaulted in the La Salle action.

■ Liberty contends that Mid-America's conduct in the proceedings was wrongful in that it did not provide notice to Liberty of the *nunc pro tunc* order and it continued to defend itself in Liberty's action after the La Salle judgment. We do not find that the conduct of Mid-America was unfair, unjust, or unconscionable. Since Liberty had defaulted, it was not entitled to notice of the *nunc pro tunc* order. Furthermore, Mid-America was not at fault in continuing to defend itself against Liberty's complaint after Liberty defaulted. Liberty could have moved to vacate its default prior to the sale of the property, and,

if successful, would have vaulted its position above Mid-America's. Nor do we find, as Liberty argues, that Mid-America had a duty to advise Liberty of the consequences of its failure to vacate the default. Clearly, Liberty must bear sole responsibility for failing to understand the consequences of its actions.

Further, we do not find that Mid-America engaged in wrongdoing in proceeding with the sheriff's sale. The sale was conducted more than two months after the judgment. From the time of judgment to the time of sale, Liberty had sufficient notice and time to come in and properly defend its interest.

We note finally that Liberty could have protected its interest by successfully bidding for the property at the sheriff's sale. Liberty was present at the sale and did not bid. Liberty argued to the trial court that it was not prepared to bid an amount over its lien and it was not fair to expect Liberty to do so. It contended that it could have protected its interest by bidding an amount equal to its and La Salle's liens had Mid-America's position not been improperly elevated. Since we find that Mid-America's position was not improperly elevated, this argument is without merit. We further point out that the successful bid in this case was made by a nonparty at $99,000, a sum that far exceeds the amount of the liens held by La Salle and Liberty, totaling $66,262.

In summary, we find fairness and justice do not require vacating Liberty's default judgment, and the trial court's decision was an abuse of discretion. Liberty must bear the loss that resulted from the property being purchased by a nonparty. Liberty, not Mid-America, failed to appear and answer La Salle's complaint. Liberty, not Mid-America, failed to vacate the default action or take other effective steps to protect its lien interest prior to the sale.

The decision of the circuit court vacating Liberty's default judgment is reversed.

Reversed.

UNVERZAGT, P.J., and GEIGER, J., concur.