# Illinois Official Reports

## Appellate Court

---

### *NP SCH MSB, LLC v. Pain Treatment Centers of Illinois, LLC*,
### 2021 IL App (1st) 210198

---

| | |
|---|---|
| Appellate Court Caption | NP SCH MSB, LLC, Plaintiff-Appellee, v. PAIN TREATMENT CENTERS OF ILLINOIS, LLC, an Illinois Limited Liability Company, and FARIS ABUSHARIF, M.D., an Individual, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>No. 1-21-0198 |
| Filed | September 24, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2020-L-004628; the Hon. Daniel Kubasiak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alexander N. Loftus, of Loftus & Eisenberg, Ltd., of Chicago, for appellants.<br><br>Thomas J. McDonell and Hailey A. Varner, of Quarles & Brady LLP, of Chicago, for appellee. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Mikva and Oden Johnson concurred in the judgment and opinion.

## OPINION

¶ 1      Defendants, Pain Treatment Centers of Illinois, LLC (the Center), and Faris Abusharif, M.D., appeal the order of the circuit court denying their petition to vacate the default judgment against them pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). On appeal, defendants contend that the court erred in denying their petition where plaintiff, NP SCH MSB, LLC,[1] obtained the default judgment through fraud. For the following reasons, we affirm.

¶ 2                                    I. JURISDICTION

¶ 3      On February 9, 2021, the circuit court entered an order denying defendants' section 2-1401 petition to vacate the default judgment. Defendants filed a notice of appeal on February 23, 2021. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016), allowing appeals on a judgment or order granting or denying relief under section 2-1401 of the Code.

¶ 4                                    II. BACKGROUND

¶ 5      On February 8, 2013, the Center entered into an agreement with plaintiff's predecessor in interest, SCH MSB, LLC, to lease a medical building in New Lenox, Illinois. The premises consisted of 3601 rentable square feet with an initial base rent of $22 per rentable square foot. The lease term was for seven years. The lease provided for a tenant improvement allowance of $60 per rentable square foot and an incentive of $18 per rentable square foot if the Center signed the lease by February 13, 2013. Dr. Abusharif signed on behalf of the Center as its owner/medical director.

¶ 6      The lease also required "one or more principals or owners of Tenant *** to provide a Guaranty in the form attached." By signing the guaranty agreement, Dr. Abusharif unconditionally guaranteed

> "the full, prompt and complete observance by the Tenant of the terms, covenants, conditions and provisions in the Lease required to be performed by the Tenant including all payments thereunder ***. Notwithstanding anything to the contrary set forth in this Guaranty, Guarantor's liability hereunder shall be limited at any point during the term to the 'maximum guaranty amount'. During the initial lease year, the maximum guaranty amount shall be equal to the amount of Tenant's Tenant Improvement Allowance above $50.00 per rentable square foot. The maximum guaranty amount shall thereafter decrease as of the first day of each lease year (a 'scheduled reduction date') as provided below***."

---

[1]Defendants' section 2-1401 petition and briefs on appeal misspell plaintiff's name as NP SCH MSH, LLC. Plaintiff is actually named NP SCH MSB, LLC.

The guaranty agreement further provided that the "maximum guaranty amount shall be reduced annually by one year's amortization of the Tenant's improvement allowance, amortized on a straight-line basis over the term of Lease."

¶ 7  On April 27, 2020, plaintiff filed a complaint for breach of lease and breach of guaranty. The complaint sought a money judgment against the Center for "unpaid rent that has come due through February 2020, totaling at least $126,869.71, attorneys' fees and costs, [and] costs associated with the re-letting of the Premises *** including a $30,000 relocation allowance provided to the new tenant for improvements." The complaint sought the same damages from Dr. Abusharif as guarantor "subject to the Maximum Guaranty Amount." The complaint alleged that as guarantor, Dr. Abusharif "absolutely, unconditionally, and irrevocably guaranteed" the Center's payment "of all rent and other sums" due under the lease. However, Dr. Abusharif "failed and/or refused to make payment" when informed of the Center's breach "and thus, has not satisfied his obligations under the Guaranty." Both the Center and Dr. Abusharif were served with the summons and complaint.

¶ 8  On August 14, 2020, plaintiff filed a motion for entry of default judgment against defendants. Defendants were served with notice of the filing. On August 17, 2020, the circuit court entered an order of default against both defendants, and the order continued the case to September 16, 2020, for a prove-up hearing. On the same day, plaintiff mailed a copy of the order to each defendant.

¶ 9  On September 9, 2020, plaintiff filed a prove-up affidavit, which was also served on defendants via first-class mail. In the affidavit, Amy Ziegler stated that she is the executive director of asset management for PGIM Real Estate, a business unit of PGIM, Inc. (PGIM). PGIM, in turn, was the investment manager of PRISA LP, an indirect owner of plaintiff. Ziegler was the director responsible for the lease at issue between the parties. She stated that plaintiff is owed $345,979.32 as of September 9, 2020, "as a result of [the Center's] failure to pay its obligations under the Lease, including but not limited to Net Rental, Additional Rent, and other amounts owed under the Lease for the Premises since April 1, 2019 through September 9, 2020." Ziegler's affidavit further stated that plaintiff is owed "$345,979.32 as of September 9, 2020 from Guarantor as a result of [the Center's] failure to pay its obligations under the Lease."

¶ 10  On September 16, 2020, the circuit court held a prove-up hearing and entered an order of judgment in favor of plaintiff and against the Center and Dr. Abusharif, "jointly and severally, in the amount of $345,979.32 (past due rent, etc. as set forth in [plaintiff's] Prove-Up Affidavit)." The court also awarded $16,052.50 in attorney fees and $825.37 in costs for a total judgment of $362,857.19. That same day, plaintiff mailed a copy of the judgment to defendants.

¶ 11  Pursuant to the judgment, plaintiff "immediately" served Dr. Abusharif with a third-party citation to his new business. On November 18, 2020, defendants filed a petition to vacate the default judgment pursuant to section 2-1401 of the Code, and for leave to file an answer *instanter*. In the petition, defendants alleged that the Center "is not in good standing and was administratively dissolved on March 13, 2020." It further alleged that Dr. Abusharif tested positive for COVID-19 and was "unable to participate in any matters attendant to this litigation."

¶ 12  In support of the section 2-1401 petition, Dr. Abusharif alleged that he had a meritorious claim or defense in that, pursuant to the express terms of the guaranty agreement and lease, he

personally "has little or no monetary liability." Under the terms of the lease, he was only obligated to the "maximum guarantee amount" which he alleged was $5144.28 at most. The petition further alleged that in July 2020, Dr. Abusharif "was stricken with Covid-19 and unable to respond to the complaint against him or otherwise engage in normal activities of daily life for some time." When he was served with the third-party citation, Dr. Abusharif was able to obtain counsel and filed the instant motion. The petition alleged that the judgment against him "amounts to a fraud on the court" because the express terms of the lease show that "the personal guaranty is very limited." The petition alleged that in "seeking damages in excess of what was plainly allowed" by the lease, plaintiff's counsel violated Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).

¶ 13    In response, plaintiff argued that defendants have not shown due diligence as required by section 2-1401. Defendants were served with copies of the complaint, default judgment, and prove-up affidavit but did not defend the complaint or challenge the judgment within 30 days. Although Dr. Abusharif was diagnosed with COVID-19, defendant's petition presented no factual allegations showing he was unable to contact or communicate with counsel or the court. Furthermore, defendants were actively litigating another lawsuit filed by PNC Bank, N.A., during the same time period, from July 2020 to October 2020, in federal court. This showed defendants "were fully able to communicate with their attorneys, participate in settlement negotiations virtually, and approve other actions in the litigation, despite Abusharif's positive Covid-19 test on July 1, 2020." Plaintiff also disputed that defendant had a meritorious defense, contending the maximum guaranty amount no longer applied due to the Center's breach and the resulting termination of the lease term. Without proof of due diligence and a meritorious defense, plaintiff argued that defendants' section 2-1401 petition cannot succeed.

¶ 14    The circuit court denied defendants' petition. The court found that they did not meet the due diligence element

> "because they plead only one sentence in their petition related to Abusharif's positive test results for Covid-19 from ten days before he was personally served with the complaint in this action. The court is fully aware of the problems that COVID has caused and the severity of the infection, however defendant offers nothing more than a positive test result 10 days before service. Defendant does not provide a report of medical treatment, an argument that he was incapacitated, or even that the positive test result had any ill effect upon him. As [plaintiff] notes, Defendants do not offer any specific factual allegations as to why Abusharif was unable to contact [the Landlord's] counsel or the court by phone, email, or at any time during the case, forward the complaint to his attorneys via e-mail, attend virtual Zoom hearings, file an appearance electronically, or take any other action after being served with the complaint.
>
> * * *
>
> Further, the facts show that Defendants were actively litigating under another lawsuit over the exact same time period *** which suggests that Defendants were fully able to communicate with their attorneys despite Abusharif's positive COVID-19 test on July 1, 2020."

¶ 15    Defendants filed this appeal.

¶ 16                                     III. ANALYSIS

¶ 17        Defendants contend that the circuit court erred in denying their section 2-1401 petition to vacate the default judgment. Section 2-1401 of the Code "provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated" more than 30 days after entry of the judgment. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986). Section 2-1401 does not afford a remedy whereby a litigant "may be relieved of the consequences of his own mistake or negligence." *Id.* at 222. Rather, a party is entitled to relief under section 2-1401 only if it can show it acted reasonably under the circumstances in failing to challenge the judgment. *Id.* We review the circuit court's denial of a section 2-1401 petition for abuse of discretion. *Id.* at 221.

¶ 18        To obtain relief under section 2-1401, a party "must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Id.* at 220-21. In the case at bar, the circuit court found that defendants did not sufficiently show due diligence in presenting their defense in the original action. Defendants argue, however, that the monetary judgment against them was based on a fraudulent prove-up affidavit. They contend that because section 2-1401 invokes the equitable power of the circuit court, a default judgment based on fraud may be vacated even if due diligence has not been shown.

¶ 19        As support, defendants cite *Bonanza International, Inc. v. Mar-Fil, Inc.*, 128 Ill. App. 3d 714 (1984). In *Bonanza*, defendants Mar-Fil, Inc. (Mar-Fil), and Mario Luperini entered into a franchise agreement with Bonanza regarding the operation of a restaurant in Darien, Illinois. *Id.* at 715. The agreement required defendants to pay Bonanza 4.8% of the restaurant's weekly gross receipts in return for the right to use Bonanza's trademarks and service marks. On December 21, 1982, Bonanza filed a complaint alleging that defendants failed to make such payments from February 1, 1981, through December 31, 1981, resulting in a deficiency of $32,062.71 in payments. *Id.*

¶ 20        Both defendants were served with the complaint and summons, but neither filed an appearance or pleading in response. On March 1, 1983, without notice to the defendants, Bonanza filed a motion for default judgment. The circuit court entered an order of default judgment on March 14, 1983, and continued the cause for a hearing on damages. Defendants were not given notice of the hearing, which was held on April 18, 1983. *Id.* at 715-16. At the hearing, Bonanza presented the affidavit of Gregg Simmons, the director of credit and collections for the company. He stated that he was " 'personally familiar' " with the franchise agreement at issue and that the sums due under the agreement as of January 6, 1982, equal $32,062.71. *Id.* at 716. Based on Simmons's affidavit, the court entered judgment against defendants for the requested amount plus costs. On the notice of default judgment, dated April 20, 1983, the space for the defendants' address was left blank "and it appears that the notice was never sent." *Id.*

¶ 21        On June 30, 1983, Bonanza served defendants with citations to discover assets. Thereafter, an attorney appeared on defendants' behalf and filed a section 2-1401 petition to vacate the default judgment. Attached to the petition was the affidavit of Luperini. Luperini stated that Simmons's affidavit was inaccurate, possibly fraudulent, and that the amounts purportedly due failed to include setoffs. *Id.* Luperini was informed by Bonanza's president, John Boylan, that defendants' debt had been cut in half because of consulting work he and Mar-Fil performed

for Bonanza. Luperini further stated that he did not respond to the initial complaint because Boylan told him during a telephone conversation that Bonanza would not pursue the case and defendants need not file a defense or consult an attorney. He stated that he did not know of the judgment in the case until he was served with the citation to discover assets. *Id.* at 716-17.

¶ 22    Bonanza did not file a response, but instead filed Boylan's counteraffidavit. In it, Boylan admitted that he and Don Thomson of the board of directors visited Luperini at his Maximillian's restaurant because Bonanza was in the process of developing an Italian restaurant. Boylan and Thomson agreed that because of Luperini's cooperation in showing them the concept of his restaurant, the debt owed to Bonanza would be reduced to $20,000. *Id.* at 717. After a hearing on the petition, without presentation of other evidence, the circuit court denied defendants' section 2-1401 petition.

¶ 23    The appellate court, however, reversed. It found Luperini presented a meritorious defense of a partial accord and satisfaction, and Simmons's counteraffidavit supported the defense. Boylan agreed that defendants' debt would be reduced because Luperini allowed Simmons and Boylan to observe the concept of his Maximillian's restaurant. *Id.* at 718.

¶ 24    The court further found that the question of due diligence in presenting the defense "cannot be determined from this record." *Id.* at 719. It did not remand for a finding of due diligence, noting it was "undisputed that Luperini was not informed of the default judgment until he was served with the citations" to discover assets. *Id.* Bonanza also waited more than 30 days after the default judgment to serve the citations, which "cast a cloud on the proceedings because the standards for vacating a default judgment within 30 days of its entry are less stringent." *Id.* at 720. The court held that even in the absence of due diligence, under these circumstances "justice and good conscience require that the default judgment be vacated." *Id.*

¶ 25    While the court in *Bonanza* vacated the default judgment without a finding of due diligence, it based its holding on the fact that Luperini had no notice of the prove-up hearing or default judgment until he was served with the citations to discover assets more than 30 days after the judgment. The court further found that Bonanza's actions in waiting more than 30 days to serve the citations "cast a cloud on the proceedings." In this case, defendants were given notices of the prove-up hearing and the default judgment, and plaintiff served the citations to discover assets "immediately" after the judgment. Despite the timely notice, defendants waited two months to file their section 2-1401 petition. The equitable considerations that concerned the court in *Bonanza* are not applicable here.

¶ 26    The due diligence requirement serves to deny petitioners a new opportunity to do that which they should have done at the earlier proceeding. *Goncaves v. Saab*, 184 Ill. App. 3d 952, 956 (1989). As such, relaxing the due diligence requirement "is justified only under extraordinary circumstances" where necessary to prevent an unjust entry of default judgment or where the opposing party engaged in unconscionable conduct. (Internal quotation marks omitted.) *Illinois Neurospine Institute, P.C. v. Carson*, 2017 IL App (1st) 163386, ¶ 30 (citing *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005), and *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 689 (2002)). We find no extraordinary circumstances here.

¶ 27    Defendants disagree, arguing that this court should vacate the default judgment because the damages against them were based on a fraudulent prove-up affidavit. Ziegler's affidavit erroneously stated that Dr. Abusharif is responsible for the entire damages award against the

Center, notwithstanding the clear language in the guaranty limiting his personal liability to the "maximum guaranty amount" as set forth in the agreement.

¶ 28        Defendants, however, had notice of the prove-up hearing and were mailed copies of Ziegler's prove-up affidavit prior to the hearing. This defense was known to defendants and available to them prior to entry of the court's order awarding damages to plaintiff. Where defendants "could readily have discovered the matter asserted as the basis for the instant petition, there exists no reason to lessen the diligence burden." *Goncaves*, 184 Ill. App. 3d at 958; see also *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 83 (finding that petitioner did not act with diligence where her section 2-1401 petition claimed her former husband fraudulently failed to disclose his interests in certain business entities, but she had every opportunity to negotiate into the agreement a clause requiring him to disclose the value of his interests in the entities, and at the prove-up hearing she had the opportunity to challenge whether he fairly valued his assets). Defendants had every opportunity to challenge the calculation of damages in Ziegler's prove-up affidavit but did not do so.

¶ 29        Defendants argue, however, that Ziegler's statements directly contradicted plaintiff's pleadings in which plaintiff alleged that Dr. Abusharif's liability was "subject to the Maximum Guaranty Amount." They contend that he "had little or no potential liability based on what was actually pled in the Complaint," and "had a default been entered for what was pled in the Complaint [Dr. Abusharif] frankly would have been wise to not bother paying counsel to respond." They conclude that this is the type of case where due diligence should be "relaxed or eliminated" because the contract did not allow for the judgment against Dr. Abusharif.

¶ 30        We disagree that equity requires relaxation of the diligence requirement here. As discussed, defendants had copies of Ziegler's affidavit prior to the prove-up hearing and could have challenged her statements before the court entered judgment based on her affidavit. They did not do so. If Dr. Abusharif made a calculated decision not to respond to the default judgment because of his belief that he had little or no personal liability, we emphasize that defendants must not disregard their legal rights and obligations. *Airoom*, 114 Ill. 2d at 224. " 'Relief under section [2-1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost.' " *Id.* (quoting *Abbell v. Munfield*, 76 Ill. App. 3d 384, 388 (1979)).

¶ 31        We note that Dr. Abusharif's petition also stated that he tested positive for COVID-19, but he does not elaborate on appeal how the diagnosis affected his diligence in pursuing his defense below. His appeal instead focuses on his fraud argument. In any event, the circuit court found that the section 2-1401 petition did not provide specific factual allegations that he was incapacitated or that he "was unable to contact [plaintiff's] counsel or the court by phone, e[-]mail, or at any time during the case, forward the complaint to his attorneys via e-mail, attend virtual Zoom hearings, file an appearance electronically, or take any other action after being served with the complaint." The court also found that defendants "were fully able to communicate with their attorneys despite Abusharif's positive COVID-19 test on July 1, 2020," because they were actively litigating another case in federal court during that time. We find no reason to disturb the circuit court's findings. Based on the facts of this case, the circuit court did not abuse its discretion in denying defendants' section 2-1401 petition to vacate the default judgment.

¶ 32                              IV. CONCLUSION

¶ 33          For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 34          Affirmed.