Albert Bonn, Appellant, v. Gertrude Arth, Appellee.

Term No. 47F15.

322

Opinion filed April 28, 1947.   Released for publication June 2, 1947.

PHILIP G. LISTEMAN and LLOYD MIDDLETON, both of East St. Louis, for appellant; WHITNEL, LISTEMAN & WALKER, of East St. Louis, of counsel.

JAMES L. REED, of Edwardsville, for appellee.

MR. JUSTICE BARTLEY delivered the opinion of the court.

Plaintiff, Albert Bonn, filed suit against defendant, Gertrude Arth, for personal injuries and in substance alleged that he was run down by an automobile negligently operated by the defendant. A judgment by default for $4,000 was entered against the defendant on July 25, 1946. Subsequently, on November 12, 1946, upon motion of defendant, an order was entered by the trial court vacating and setting aside the default judgment and granting her leave to answer plaintiff's complaint. This is an appeal from that order.

The complaint was filed on June 12, 1946. A summons was issued and personally served on the defendant on June 14, 1946, and the return day was July 15, 1946. No answer or other pleading was filed by the defendant by the return day nor up until July 25, 1946, on which date a default was taken against the defendant. On the same day, plaintiff waived trial by jury and the cause was heard by the trial judge. The defendant was found guilty and plaintiff's damages were assessed at $4,000, and judgment was entered on this date for this amount. A *praecipe* for execution on this judgment was filed August 30, 1946, and the return on the execution issued showed that it was served upon the defendant on September 10, 1946. It was returned by the sheriff on November 21, 1946, showing that it was not satisfied.

On October 16, 1946, defendant filed a motion requesting the trial court to set aside the judgment entered on July 25, 1946, and for permission to file an answer and asked the trial court "to exercise its equitable power to correct the wrong, or, alternatively, its power under Section 72, of the Civil Practice Act," for the following reasons: That defendant's failure to answer the complaint within the time required was due to an excusable mistake; that the defendant was under a contractual duty to entrust the defense of the case to her insurance company; that the summons, through the excusable mistake and negligence of Melvin Marti, upon whom defendant relied to deliver the summons to the insurance company's agent, and without any notice or knowledge to her, was never delivered to the company until after an execution was issued on the judgment; that the default was taken on a hearing, not on a regular call of the docket, and that the defendant could not have had any notice of the hearing on the merits or the hearing on the assess-

ment of damages by an investigation of the public trial calendar of the court; that defendant has a meritorious defense to the plaintiff's claim; that defendant is insolvent, and unable to pay the judgment; that the insurance company refuses to do so on account of its failure to receive notice of suit in time to defend on the merits; that defendant's driver's license will be forfeited if the judgment is not set aside, and this will prevent her from driving an automobile, thus working an irreparable and undue hardship on her.

The motion to vacate the judgment is supported by affidavits of the defendant, her husband, Arnold Arth, Harry Taake, local insurance agent for the Economy Auto Insurance Company and Melvin Marti, a coworker of Harry Taake. The defendant in her affidavit stated that on October 4, 1945, she had a collision with the plaintiff who was a pedestrian; that her husband reported the accident to the Economy Auto Insurance Company with which he was insured; that a representative of the company interviewed her in regard to the accident and at the time made the following statement: "I will take care of it from hereon"; that he did not tell her what to do if she received a summons to appear in court; that she received a summons on June 14, 1946, and gave it to her husband on the same day; that she heard nothing further about the accident and lawsuit from anyone until September 10, 1946, when an execution was delivered to her by the deputy sheriff; that she did not know a judgment had been entered against her until that time; that she never conducted any insurance business with the Economy Auto Insurance Company through Melvin Marti to whom her husband had delivered the summons at the Troy Grain Company; that she had never had any conversation with the local agent for the company, Harry Taake, in regard to what she should do after receiving a summons. Her affidavit contained a statement by her what the circumstances were per-

taining to the accident in regard to due care on her part and contributory negligence on the part of the plaintiff. The affidavit of the defendant's husband, Arnold Arth, contained the following information: that he had his automobile insured with the Economy Auto Insurance Company of Freeport, Illinois, for the past six years, including the day of the accident in question; that Harry Taake was the local agent for the company and that he purchased this insurance from him during that time; that he reported the accident to the agent the day following; that on June 14, 1946, the date on which his wife, the defendant, received the summons, he took it to the Troy Grain Company where the local agent was employed; that Melvin Marti, who was also employed at the Grain Company, advised him that Harry Taake was not present at that time; that he delivered the summons to Melvin Marti, instructing him to deliver it to the agent, Harry Taake, when he returned; that from June 14, 1946, until September 10, 1946, he had no occasion and did not talk to the agent Harry Taake about the suit or the summons, but presumed that Melvin Marti had delivered the summons to the agent and presumed that the insurance company was taking care of the matter in the circuit court; that on September 10, 1946, the day on which his wife, the defendant, received the execution, he delivered it to the agent, Harry Taake, at which time the agent asked him if he had ever received a summons, and he for the first time told the agent that he had received a summons and had delivered it to Melvin Marti on the same day it was received; that the next day a representative of the insurance company called at his home and asked why the summons had not been sent to the company; that he told this representative that he gave it to Melvin Marti who takes care of the business of the grain company when the agent Harry Taake was not there; that he figured it was just as good as giving it to the

agent; that before that date he always conducted his business with the Economy Auto Insurance Company with the agent Harry Taake; that before that date he had never dealt with the insurance company through Melvin Marti; that he knew Melvin Marti and Harry Taake both were employed by the same company at the mill and he assumed that by delivering the summons to Melvin Marti, that it would be delivered to the agent Harry Taake; that he relied on Melvin Marti's promise to deliver the summons to the agent Harry Taake and to notify him of the suit; that he believed and assumed that Marti had done so and knew nothing to the contrary until the execution was delivered to his house.

Melvin Marti in his affidavit stated that he was employed by the Troy Grain Company as assistant manager and that Harry Taake was the manager; that in addition to being manager of the company, Harry Taake had a side line as an agent of the Economy Auto Insurance Company; that Arnold Arth brought the summons in question on the 14th day of June 1946, to where he was employed and asked him to deliver it to Harry Taake who was then not present; that he placed the summons in one of the pigeon holes of the roll-top desk in the office of the Troy Grain Company; that he intended to call agent Harry Taake's attention to the summons the next day but forgot and did not mention it or the suit to him until about the 11th day of September 1946, when agent Taake asked him if he had received the summons from Arnold Arth, at which time he produced the summons from the pigeon hole of the desk and handed it to him; that his duties were strictly for the Troy Grain Company; that he had never had any connection with the Economy Auto Insurance Company, either as agent, employee or otherwise; that in accepting the summons from Arnold Arth he was merely attempting to do a favor for Arnold Arth and agent Taake.

Harry Taake in his affidavit corroborates Melvin Marti in his statement regarding their positions with the Troy Grain Company and his position with the insurance company. He states that the first time he had ever had any knowledge that a suit had been brought against defendant, Gertrude Arth, was on September 10, 1946, when Arnold Arth delivered the execution to him; that he was not present at the Grain Company on June 14, 1946, and that when the execution was delivered to him he asked Arnold Arth if his wife Gertrude Arth had ever received a summons to appear in court, and was then told that she had received a summons and that Arnold Arth had delivered it to Melvin Marti; that upon inquiry of Melvin Marti regarding the summons, he was advised by Marti that Marti had placed the summons in the desk and had forgotten about it until it was mentioned to him; that at this time Marti took the summons from the desk and handed it to him; that he did not know that the summons was in the pigeon hole in the desk until it was delivered to him by Marti.

Plaintiff, who was ordered to plead to the motion, filed a motion to strike or in the alternative to deny defendant's motion to set aside the judgment and in support of said motion stated that because more than 30 days had elapsed between the entry of the judgment and the filing of said motion, the court was without jurisdiction or authority to vacate the judgment; that defendant's motion and supporting affidavits are insufficient to give the court jurisdiction under sec. 72 of the Civil Practice Act; that the motion and affidavits in support thereof fail to show that the defendant had a meritorious defense to plaintiff's suit; and that they show that the defendant was guilty of culpable negligence that precludes her from obtaining the relief prayed for in her motion.

On November 12, 1946, the trial court denied plaintiff's motion and ordered plaintiff to plead. Plaintiff

refused to plead and elected to stand on his motion, whereupon the trial court vacated and set aside the judgment. The defendant was granted 10 days to plead to the plaintiff's complaint and plaintiff was ordered to pay the costs of the proceeding.

Plaintiff appeals from the judgment of November 12, 1946, and asks that it be reversed and set aside.

■ Plaintiff takes the position that the motion by defendant to vacate the judgment is a proceeding under the provisions of sec. 72 of the Civil Practice Act and that the defendant by reason of her negligence is not entitled to relief under this section. This section (Ill. Rev. Stat., ch. 110, par. 196 [Jones Ill. Stats. Ann. 104.072]) provides that: "The writ of error coram nobis is hereby abolished, and all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing, made at any time within five years after the rendition of final judgment in the case, upon reasonable notice." While the statute has substituted a motion for the writ of error coram nobis, the essentials of the proceedings upon the motion are the same, and the same practice governs it as upon the writ. In regard to the scope of inquiry on a motion filed under sec. 72 of the Civil Practice Act, the Supreme Court in the case of *Jerome v. 5019–21 Quincy St. Bldg. Corp.*, 385 Ill. 524, on page 527 stated as follows: "It will be observed that the scope of inquiry on such a motion is limited to errors in fact, not appearing on the face of the record, committed in the proceeding, which errors in fact could have been inquired into by the common-law writ of error coram nobis. In illustrating the questions of fact that were subject to inquiry under such a motion, this court has in various cases referred to matters such as disability of the parties to sue or defend, the failure of the clerk to file a plea or answer, and where a de-

fendant who was not negligent but was through fraud, duress or excusable mistake, prevented from interposing a valid defense existing in the facts in the case. *Jacobson v. Ashkinaze,* 337 Ill. 141; *Marabia v. Mary Thompson Hospital,* 309 Ill. 147; *Chapman v. North American Life Ins. Co.,* 292 Ill. 179.''

The defendant in her brief and argument states that her motion is ''addressed primarily to the court's chancery jurisdiction,'' and in it asks the court ''to exercise its equitable power to correct the wrong.'' The Supreme Court in *Miller v. Barto,* 247 Ill. 104, 108, in commenting on equitable relief being granted against a judgment being obtained by fraud, accident or mistake, made the following statement: ''Courts of equity have so often granted relief against judgments obtained by fraud, accident or mistake, where there has been no negligence on the part of a defendant, that there can be no question of power or jurisdiction to afford a remedy in such a case. If it is against conscience to execute a judgment and the defendant was prevented from making his defense by fraud or accident unmixed with any fault or negligence in himself or his agents, and the rights of third parties have not intervened, equity will relieve against the wrong. (*Hilt v. Heimberger,* 235 Ill. 235.) A court of equity, however, will not give ear to one who merely asks it to relieve him from the consequences of his own negligence or that of his agents. A court of equity is only moved to action by diligence, and does not interpose to protect one who has not exercised proper diligence to protect his own interests and to make a defense which was available to him in a court of law. This court long ago said that the rule is absolutely inflexible and cannot be violated even when the judgment in question is manifestly wrong in law or in fact, or when the effect of allowing it to stand will be to compel the payment of a debt which the defendant does not owe. (*Hinrichsen v. VanWinkle,* 27 Ill. 334.)''

From the facts recited in the affidavits in support of defendant's motion, it appears that defendant was not without fault, but was grossly negligent in failing to plead to plaintiff's complaint within the time required by law and in subsequently failing to file her motion to vacate the judgment entered by default within 30 days after the judgment was entered as provided for under sec. 50 of the Civil Practice Act. (Ill. Rev. Stat., ch. 110, par. 174 [Jones Ill. Stats. Ann. 104.050].) The defendant, upon receiving the sum-, mons, turned it over to her husband for delivery by him to the agent of the insurance company. The husband in turn delivered it to Melvin Marti, who in no way was connected with the insurance company and relied upon Marti to deliver the summons to the insurance agent. The summons was delivered to Marti on June 14, 1946, and from that date until September 10, 1946, when the defendant was served with execution, neither she nor her husband made any effort to inquire of the agent of the insurance company as to whether or not he had received the summons from Melvin Marti and as to whether or not the insurance company was doing anything in regard to defending the lawsuit. Eighty-three days elapsed after judgment was entered and 35 days after execution was served before the defendant filed her motion requesting the court to set aside the judgment and to permit her to file an answer. The defendant was not without fault and was negligent, and therefore was not entitled to relief either under the application of the provisions of sec. 72 of the Civil Practice Act, or under the rules of equity applying to a request to set aside a judgment obtained by reason of fraud, accident or mistake, and it is therefore immaterial whether we consider this proceeding a motion under sec. 72 of the Civil Practice Act, or a proceeding in equity. (*Jerome v. 5019–21 Quincy St. Bldg. Corp.*, 385 Ill. 524; *Marabia v. Mary Thompson*

*Hospital,* 309 Ill. 147; *Miller v. Barto,* 247 Ill. 104; *Higgins v. Bullock,* 73 Ill. 205.)

The defendant relied upon Melvin Marti to deliver the summons in question to her insurance agent. This we believe she did at her peril. In the case of *Higgins v. Bullock,* 73 Ill. 205, the defendant was served with summons but failed to make any defense upon the promise of the sheriff not to return the summons as served until he ascertained if it was intended for another person of the same name, and then if it was not so intended, to notify the defendant before returning the summons as served on him, which he did not do. The court held that this was insufficient excuse for the defendant neglecting to interpose his defense, and on page 208 the court made the following statement:

"When appellee had caused to be issued a summons in due form of law, and had it served upon appellant by the proper officer, and in the mode prescribed by the statute, he had performed his whole duty, and if appellant failed to appear and interpose his defense, but placed reliance on statements of the sheriff, he did this at his peril.

"A court of chancery has the undoubted power to afford relief in a proper case, against a judgment at law, but it must appear that the party complaining has been guilty of no negligence or laches, and that he has been prevented from interposing a defense through accident, fraud or mistake, without fault or blame on his part."

The judgment of the trial court of Madison county, entered November 12, 1946, vacating and setting aside the judgment of July 25, 1946, in favor of plaintiff, Albert Bonn, in the sum of $4,000 is hereby reversed and the cause remanded with directions to overrule defendant's motion to set aside the judgment of July 25, 1946.

*Reversed with directions.*

CULBERTSON and SMITH, JJ., concur.