NATHAN YORKE, Trustee, Plaintiff and Petitioner-Appellee, *v.* STINEWAY DRUG COMPANY, INC., Defendant and Respondent-Appellant.

First District (2nd Division)    No. 81—1793

Opinion filed December 7, 1982.

Arvey, Hodes, Costello & Burman, of Chicago (Gary David Friedman, Donald F. Spak, and Judy I. Byrd, of counsel), for appellant.

Teller, Levit & Silvertrust, P.C., of Chicago (Edward S. Margolis and Leo Feldman, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

LAG Drug Company, Inc. (LAG), brought an action on September 9, 1975, against Stineway Drug Company, Inc. (Stineway), to recover the purchase price of merchandise LAG allegedly sold to Stineway. LAG was subsequently adjudicated bankrupt, and on March 3, 1978, Nathan Yorke (Yorke) was appointed trustee in bankruptcy for LAG. On June 20, 1979, the trial court granted Yorke's motion to substitute himself for LAG and to file an amended complaint. On February 6, 1981, this case was dismissed for want of prosecution. Three and one-half months later Yorke filed a section 72 petition to vacate the dismissal order. The trial court granted Yorke's section 72 petition on June 17, 1981. Stineway has appealed under Supreme Court Rule 304(b)(3) (73 Ill. 2d R. 304(b)(3)) and contends that: (1) the trial court did not have subject matter jurisdiction to grant Yorke's section 72 petition; (2) Yorke's section 72 petition was insufficient; and (3) the court erred in not conducting an evidentiary hearing on the section 72 petition. For the reasons hereinafter stated, we affirm.

LAG is a wholesaler of pharmaceuticals and other sundries to pharmacies, mass merchandisers and discount stores. Stineway operates a chain of retail stores. On September 9, 1975, LAG brought this action against Stineway to recover the purchase price of merchandise LAG allegedly sold to individual Stineway stores. Although LAG billed the individual stores for a total of $47,631.58 and demanded payment, none of these stores made any remuneration.

Stineway denied that it or its retail stores purchased the merchandise in question. Instead, it alleged that Ford Hopkins Company (Ford Hopkins), a company "affiliated" with Stineway, bought the merchandise. Stineway also alleged the following: LAG had first tried to recover the purchase price of the merchandise from Ford Hopkins through a counterclaim filed by LAG in a prior unrelated lawsuit. After the filing of LAG's counterclaim, Ford Hopkins filed a petition under Chapter 11 of the Federal Bankruptcy Laws. LAG then filed a claim in the bankruptcy proceedings for the purchase price of the

merchandise. LAG subsequently purchased Ford Hopkins in the bankruptcy proceedings, and only then did LAG prepare the invoices that were ultimately sent to Stineway.

LAG admitted being the present owner of Ford Hopkins. It denied that LAG's prior claim against Ford Hopkins involved the same merchandise which is the subject matter of the instant lawsuit.

LAG later was also adjudicated bankrupt (date unknown) and on March 3, 1978, Nathan Yorke was appointed trustee in bankruptcy. On June 20, 1979, the trial court allowed Yorke's motions to substitute himself for LAG as plaintiff in the instant suit, to amend the complaint and to substitute his attorneys for LAG's attorneys. On February 5, 1981, a notice appeared in the Chicago Daily Law Bulletin (Law Bulletin) that the case of *LAG v. Stineway Drug Co.* was set on the trial calendar for February 6, 1981. Neither party appeared for trial and the court, apparently *sua sponte,* dismissed the case for want of prosecution. Notice of the dismissal order appeared in the Law Bulletin on February 9, 1981.

On May 26, 1981, Yorke filed a petition pursuant to section 72 of the Illinois Civil Practice Act and moved to vacate the dismissal order entered on February 6, 1981. In his petition, Yorke alleged the following: Yorke's attorneys, after they were substituted for LAG's attorneys, placed the matter on their office calendar and followed the progress of the case for purposes of litigation. Although Yorke first claimed that the February 5, 1981, notice was "apparently overlooked or omitted from the Law Bulletin," Yorke now concedes that the notice was in fact published. Yorke also claimed that his attorneys were assured by the assignment division of the circuit court that before the matter would be placed on the trial call, a notice of pretrial hearing would be sent to the attorneys; no such notice was ever received. Yorke suggested the notices may have been sent to LAG's original attorneys who commenced the action. On May 21, 1981, while reviewing the status of all cases filed on behalf of Yorke in his capacity as trustee, Yorke's attorneys discovered the February 6, 1981, dismissal order. Yorke, alleging that he had a valid cause of action against Stineway and that he ws diligent at all times, prayed that the February 6, 1981, dismissal order be vacated and the action be set for trial.

In its response to Yorke's petition, Stineway denied that Yorke had a valid cause of action because Stineway's answer to Yorke's complaint contained "numerous and substantial affirmative material and affirmative defenses." Stineway contended that since Yorke did not deny the affirmative matters alleged by Stineway, Stineway was entitled to a judgment based on the pleadings.

On June 17, 1981, after hearing oral arguments of both parties, the trial court granted Yorke's section 72 petition. The court cited the case of *Geller v. General Motors Corp.* (1980), 87 Ill. App. 3d 972, 410 N.E.2d 262, as controlling. In *Geller*, the appellate court affirmed the trial judge's decision granting Geller's section 72 petition, holding that mere inadvertence of plaintiff's counsel should not bar relief and that the trial judge had duly considered all the circumstances in that case.

The trial judge in the instant case was the same judge who had granted Geller's petition. He noted that Stineway's contentions were almost identical to those of the respondent in *Geller*. After considering all of the circumstances surrounding Yorke's petition, the trial judge applied the principles of the appellate decision in *Geller* and granted the section 72 petition, vacating the February 6, 1981, dismissal order.

On appeal, Stineway first contends that the trial judge lacked jurisdiction to grant Yorke's section 72 petition. Section 72 of the Civil Practice Act (now codified as section 2—1401 of the new Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401)) provides for a procedure to vacate final orders and judgments after 30 days from their entry. Ill. Rev. Stat. 1979, ch. 110, par. 72.

Stineway cites as applicable to the instant case the recent case of *Flores v. Dugan* (1982), 91 Ill. 2d 108, 435 N.E.2d 480, wherein the Illinois Supreme Court held that an order dismissing an action for want of prosecution is not a final and appealable order under Supreme Court Rule 301 (73 Ill. 2d R. 301). The court reasoned that under section 24 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 24a, now codified as section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—217)), plaintiff could, within one year, refile the same complaint and relitigate the same issues to judgment. Therefore, since Flores had an absolute right to refile the action within the statutory limit, the order of dismissal in *Flores* could not terminate the litigation and thus was not a final and appealable order. 91 Ill. 2d 108, 114.

Stineway seeks to extend the rationale of *Flores* so as to deny a *trial court's* jurisdiction in a section 72 petition to vacate an order dismissing an action for want of prosecution after 30 days but within one year from such dismissal. Stineway argues that under *Flores* a trial court has jurisdiction under section 72 to vacate only final orders and judgments. Since an order to dismiss an action for want of prosecution is not final for one year after entry and Yorke's petition to vacate was brought within one year, Stineway concludes that the trial

court lacked jurisdiction to grant Yorke's petition.

■ We note, however, that *Flores* involved not a section 72 petition but a direct appeal from an order dismissing an action for want of prosecution. The majority opinion in *Flores* makes no reference to section 72 petitions.[1] In the absence of a pronouncement by the Illinois Supreme Court that *Flores* was intended to apply to section 72 petitions, we believe that the scope of *Flores* should be limited to the parameters of that case.

■ Stineway also contends that Yorke failed to establish due diligence in alleging that his attorneys overlooked the Law Bulletin notices and did not receive any postcard notices. A section 72 petitioner must allege facts in his petition which reveal both a meritorious claim (or defense) and the exercise of due diligence in presenting such a claim (or defense). (*Hall v. Hall* (1973), 15 Ill. App. 3d 599, 304 N.E.2d 763.) The section 72 proceedings cannot be used to relieve a party of the consequences of his own negligence. *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294.

In the instant case, the trial court relied on *Geller v. General Motors Corp.* (1980), 87 Ill. App. 3d 972, 410 N.E.2d 262, as controlling precedent. In *Geller*, the plaintiff failed to answer a trial call and his action was dismissed for want of prosecution. Both the court call and the dismissal order appeared in the Law Bulletin. A postcard notice of the dismissal order was sent to the plaintiff's attorney but was returned undelivered. The defendant in *Geller* argued that the plaintiff's inadvertance did not justify section 72 relief. While the appellate court recognized that the plaintiff had a duty to follow his case, the court held that his counsel's inadvertence should not bar relief under section 72 because the trial court did in fact consider all of the circumstances of the case. In *Geller*, the plaintiff's attorney was out of town at the time the dismissal order was entered. In addition, the attorney gave inclement weather and personal problems as reasons for his failure to appear at the hearing. The appellate court found that under the circumstances reinstatement of the case was appropriate; it was reasonable to require the defendant to go to trial, and the length of delay after dismissal was not unreasonble. The court cited *Reuben H. Donnelley Corp. v. Thomas* (1979), 79 Ill. App. 3d 726, 729-30, 398 N.E.2d 972, for the proposition that:

> "Because a section 72 petition is addressed to their equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and fairness may require it a

---

[1]Justice Simon dissented in an opinion joined by Justices Goldenhersh and Clark.

judgment may be vacated even though the requirement of due diligence has not been satisfied."

In the present case, Stineway contends that the trial court erred in relying on *Geller*. Stineway argues that despite Geller's admission that he did not follow the progress of his case, the extraordinary circumstanes in *Geller* may have made the granting of the section 72 petition appropriate but that none of *Geller's* extraordinary circumstances are present in this case. As previously noted, the trial judge who granted Yorke's petition in the present case also granted Geller's petition in the *Geller* case. The court deemed Stineway's contentions in the instant case almost identical to those of the respondent in *Geller*.

A section 72 petition is addressed to the equitable powers of the court, and a reviewing court will interfere only where there has been an abuse of discretion. (*Resto v. Walker* (1978), 66 Ill. App. 3d 733, 739, 383 N.E.2d 1361.) Since it appears that in the case at bar the trial court did in fact consider all of the circumstances set forth in Yorke's petition, we cannot say that the trial court abused its discretion.

Finally, Stineway contends that even if Yorke established due diligence, the trial court erred in not conducting an evidentiary hearing to determine the disputed facts surrounding Yorke's section 72 petition. Stineway argues that since Yorke must prove the allegations contained in his petition, Yorke should be required to demonstrate that LAG has a meritorious claim notwithstanding what Stineway calls its "uncontroverted defense," *i.e.*, that LAG in fact sold the merchandise in question to Ford Hopkins.

When "the central facts of a section 72 petition are controverted, an evidentiary hearing must be held." (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 286, 433 N.E.2d 253.) However, the "central facts" of a section 72 petition are not those which would establish the underlying action but rather facts which are sufficient merely to support an order vacating the judgment. *Reuben H. Donnelley Corp. v. Thomas* (1979), 79 Ill. App. 3d 726, 730, 398 N.E.2d 972.

In the instant case, Yorke alleged that Stineway purchased goods from LAG but never paid for them. Although Stineway denied any financial responsibility and alleged that Ford Hopkins in fact purchased the goods, Yorke has alleged sufficient facts to indicate that Stineway may be responsible. We believe that Yorke's allegations are sufficient to satisfy the requirements for the filing of a section 72 petition; whether Yorke ultimately recovers from Stineway is not here

at issue. We conclude, therefore, that the trial court did not err in denying Stineway's request for an evidentiary hearing.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County granting Yorke's section 72 petition.

Affirmed.

STAMOS, P.J., and DOWNING, J., concur.