WILLIAM PIRMAN, Plaintiff-Appellant, v. A&M CARTAGE, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—95—0519

Opinion filed December 11, 1996.

James T. Rohlfing and Linda K. Williams, both of Saitlin, Patzik, Frank & Samotny, Ltd., and John Ashenden, of Law Offices of John Ashenden, all of Chicago, for appellant.

James W. Fessler, Eric L. Samore, and Michael Resis, all of Querrey & Harlow, Ltd., of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff William Pirman filed a complaint against defendants A&M Cartage, Inc. (hereinafter A&M), Daniel Chiarito and Robert Lee, seeking to recover for injuries he suffered when he was struck at a construction site by a truck allegedly driven by an employee of A&M, either Chiarito or Lee. Defendants failed to appear, answer, or otherwise plead in response to plaintiff's complaint and were therefore defaulted. Judgment was entered against them jointly and severally in the amount of $950,000. Defendants subsequently filed a petition to vacate that judgment pursuant to section 2—1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2—1401 (West 1994)), which the trial court granted, and plaintiff now appeals from that order pursuant to Illinois Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3)).

It is undisputed that this action was originally filed on October 30, 1992. In his complaint, the plaintiff alleged that on October 30, 1990, he was working at a construction site in Tinley Park, Illinois. Plaintiff further alleged that, on that day, either defendant Chiarito or Lee was driving a truck for A&M at that construction site and negligently ran into plaintiff. Plaintiff sought to recover damages for his injuries from either Chiarito or Lee under a theory of negligence, and from A&M for its employee's negligence under a theory of *respondeat superior*. On November 18, 1993, because defendants failed to appear, answer or otherwise plead in response to plaintiff's lawsuit, the trial court entered orders of default against each defendant and scheduled the matter for the prove-up of damages in December 1993. On December 22, 1993, at the conclusion of the prove-up hearing, the trial court entered a default judgment against all three defendants, jointly and severally, in the amount of $950,000, plus costs.

It is also undisputed that on October 13, 1994, nearly 10 months after the entry of the December 22, 1993, default judgment against the defendants, plaintiff sought to enforce that judgment by issuing citations to discover assets to the defendants. On November 21, 1994, defendants filed their section 2—1401 petition to vacate the default judgment.

In their section 2—1401 petition to vacate, defendants argued

that they had a meritorious defense to plaintiff's lawsuit because neither Chiarito nor Lee was involved in plaintiff's alleged accident; that they had exercised due diligence prior to being defaulted by attempting to defend themselves through their liability insurance carrier; that they had been diligent in presenting their section 2—1401 petition to vacate at their first opportunity to do so; and that the equities weighed in their favor to vacate the $950,000 default judgment. In support, defendants submitted the affidavits of August Badali, president of A&M; Marge Badali, controller of A&M; Steve Badali, vice-president and general manager of A&M; defendants Lee and Chiarito; Russ Cawthon, A&M's insurance broker; and Geary McBurrows, an adjuster with A&M's liability insurance carrier.

August Badali, president of A&M, averred by affidavit that neither defendant Chiarito nor Lee was involved in the accident that was the subject of plaintiff's lawsuit. Badali stated that Chiarito had denied any such involvement and that, according to the A&M time sheet and dispatch record attached to his affidavit, defendant Lee was more than five miles away from the scene of the alleged accident when it occurred.

August Badali further averred that A&M was first notified of the plaintiff's alleged accident in an October 1992 telephone conversation between A&M's vice-president and general manager, Steve Badali, and an unidentified third party. August Badali further stated that, as president of A&M, he was familiar with the procedures that A&M followed when it has been served with a summons and complaint. It was his responsibility to personally forward all summonses, complaints and court papers to A&M's insurance broker, Russ Cawthon. In early November 1992, Steve Badali gave August Badali the summonses and copies of plaintiff's complaint, which had been served upon Chiarito and Lee, and within one week thereafter, August mailed those documents to Cawthon. On March 10, 1993, August's wife, Marge Badali, the controller of A&M, was served with summons and plaintiff's complaint on behalf of A&M, and August forwarded those service documents, too, to Cawthon within one week of that service. August also forwarded all subsequent letters written to A&M by plaintiff's attorney to Cawthon within a week of their receipt, including the motion for default filed by plaintiff and the November 18, 1993, entry of the order of default thereon.

August Badali further averred that, on several occasions, he asked Cawthon whether he had forwarded the suit papers and other legal documents that he received pertaining to plaintiff's lawsuit to CNA, and Cawthon assured August that he had and that CNA was taking care of the matter. Prior to October 1994, when plaintiff served

Marge Badali with the citation to discover assets, August did not know that a $950,000 default judgment had been entered against A&M or against any other defendant. Until that time, August believed that his insurance carrier was defending A&M and, in particular, was handling the November 18, 1993, default orders against the defendants. According to August (and to Marge Badali in her affidavit), defendant Chiarito never informed him of the $950,000 default judgment, although as noted below, Chiarito averred inconsistently as to whether he notified A&M of that judgment or only of the November 1993 default orders preceding that judgment.

Steve Badali, vice-president and general manager of A&M, stated in his affidavit that, in September or October of 1992, he received a telephone call from an individual who identified himself as "representing A&M." The caller described plaintiff's 1990 accident to Steve and inquired as to whether Steve knew about it. Steve told the caller that he was not aware of that accident, but added that Chiarito and Lee may have on occasion driven trucks at the construction site in question. However, Steve specified in his affidavit that he did not tell that caller or anyone else that Chiarito and Lee drove trucks at that construction site on the date of plaintiff's injuries.

Defendant Lee averred in his affidavit that he was not involved in nor did he have any knowledge concerning the subject accident. Lee further averred that the aforementioned time sheet and dispatch report, also attached to his affidavit, reflected that on the day and time in question, he was driving his truck more than five miles away from the scene of plaintiff's alleged accident. Lee averred that he received substitute service of summons and plaintiff's complaint at his home on November 10, 1992. A few days later, Lee forwarded the summons and complaint to the A&M dispatcher. According to Lee, the dispatcher advised him that "[he] should not worry about the complaint because [Lee's] truck was not involved in the accident and they would forward the matter on to A&M's insurance carrier." Lee never received any other documents of any nature from any party pertaining to plaintiff's lawsuit.

Defendant Chiarito denied in his affidavit that he had any knowledge of or involvement in plaintiff's accident. Chiarito averred that he was served with the summons and complaint in this lawsuit on November 5, 1992, and he delivered it immediately to Steve Badali, who told him that A&M would handle the defense of the lawsuit on behalf of all defendants through its insurance carrier. Chiarito also stated that Steve Badali informed him that he had spoken with someone from the office of plaintiff's attorney and had informed that person that Chiarito and Lee were driving trucks for A&M in the

area where the accident occurred. Chiarito further stated that he received two letters, one on May 14 and the other on June 22, 1993, from plaintiff's attorney, which advised him that no appearance or answer had been filed in the lawsuit and that a judgment would be entered against him if he did not take immediate action. According to Chiarito, August, Marge, and Steve Badali told Chiarito not to worry about those letters because the matter had been turned over to A&M's insurance broker, Cawthon. In October 1993, plaintiff's attorney sent Chiarito a copy of plaintiff's November 18, 1993, motion for default judgment, and in response, Chiarito called Marge Badali and later Cawthon and informed them of the imminent motion. Chiarito thereafter spoke with either August or Marge Badali, who informed him that the November 18, 1993, orders of default had been forwarded to Cawthon and that the insurance company would be handling the matter.

Chiarito also averred that on May 13, 1994, while represented by independent counsel, he filed a section 2—1401 petition on his own behalf to vacate the November 18 order. Chiarito filed an amended petition to vacate on August 17, 1994. However, the trial court struck Chiarito's section 2—1401 petition because no one appeared on Chiarito's behalf at the hearings on his petitions.

Russ Cawthon, A&M's insurance broker, averred in his affidavit that he procured A&M's liability insurance policy for the 1990 policy year. It was his regular business practice and procedure to forward all summons, complaints and court papers received by an insured to the appropriate insurance carrier within two days after receipt. In November 1992, Cawthon received the summonses and copies of plaintiff's complaint that were served upon Chiarito and Lee from A&M, and in March 1993, he received the summons and complaint served upon A&M's controller, Marge Badali. In November 1993, he received a copy of plaintiff's motion for default from A&M. In December 1993, he received a copy of the November 23, 1993, letter from plaintiff's attorney, which indicated that a default had been entered against A&M and that a prove-up hearing would be conducted on December 17, 1993. Cawthon forwarded all of the above-referenced documents to CNA's office in Reading, Pennsylvania, within two business days after their receipt.

Geary McBurrows, an adjuster with the CNA branch claims office in Downers Grove, Illinois, stated in his affidavit that his Downers Grove office was responsible for adjusting lawsuits that are filed in Cook County, Illinois, against insureds of Continental Casualty Insurance Company, Inc., a CNA company and plaintiff's liability insurance carrier. He stated that the CNA office in Reading, Pennsylva-

nia (to which Cawthon had forwarded all of A&M's legal documents pertaining to plaintiff's lawsuit), had no responsibility whatsoever for the handling or adjusting of A&M's claim with respect to plaintiff's lawsuit. McBurrows further averred that his Downers Grove office first received notification of plaintiff's suit, the default order, and the default judgment on November 1, 1994, and that the matter was assigned to him for handling. On November 17, 1994, after investigating whether A&M would be covered with respect to plaintiff's lawsuit, McBurrows assigned the matter to defendants' current counsel, Querrey & Harrow, under a reservation of rights.

In his response to defendants' section 2—1401 petition, plaintiff submitted the affidavits of Philip H. Corboy, Jr., his trial counsel, Karen Cozen, legal assistant and secretary to trial counsel, Dennis Fredrickson, a detective hired by his trial counsel, and of defendant Chiarito.

Plaintiff's trial counsel averred in his affidavit that Steve Badali told a representative of counsel's law firm that defendants Chiarito and Lee were driving trucks at the construction site where plaintiff was injured on the date of plaintiff's accident. His affidavit also averred that two eyewitnesses (unidentified) saw an A&M truck strike the plaintiff on that date. This averment concerning these eyewitnesses was subsequently stricken by the trial court without any objection from the plaintiff. Trial counsel further averred that on December 20, 1991, he sent a letter to A&M advising it that he would be filing plaintiff's lawsuit and that on October 30, 1992, he filed plaintiff's complaint.[1] Service was obtained on Chiarito on November 5, 1992, on Lee on November 9, 1992, and on A&M on March 10, 1993. On May 14 and again on June 22, 1993, Corboy sent letters to defendants advising them that they had neither appeared nor answered and that he would be seeking a default judgment for the full amount of damages claimed. On October 29, 1993, Corboy sent defendants notice of plaintiff's special motion for default by certified mail and noticed up that motion for November 12, attaching copies of the sheriff's return of service to the motion indicating service upon each of the defendants. The certified letter to defendant Lee was returned unclaimed.

In his affidavit, Corboy further averred that on November 23, 1993, he wrote to each defendant enclosing copies of the November 18, 1993, orders of default against them. In that letter, he also advised defendants of the hearing date for the prove-up of damages.

---

[1]Copies of all letters and notices to which trial counsel referred in his affidavit were attached thereto.

Plaintiff proved up damages on December 22, 1993, resulting in the entry of a default judgment against defendants in the sum of $950,000. The Corboy affidavit states that copies of that judgment were sent to the defendants, but it does not purport to provide the date on which he sent such notice of the judgment to defendants.

The averments in trial counsel's affidavits were supported by the additional affidavit of his legal assistant, Karen Cozen, except that Cozen's affidavit did not include any reference to any notice given to defendants of the December 22, 1993, judgment. Additionally, Cozen stated in her affidavit that the letters sent to A&M were misaddressed to the 8400 block rather than to the 8300 block of the street on which A&M is located, but that no mail was returned to her office despite that error. Dennis Fredrickson, the detective retained by plaintiff's trial counsel, averred in his affidavit that in late October 1992 he telephoned Steve Badali of A&M, who told him that Chiarito and Lee were driving trucks for A&M at the construction site on the date of plaintiff's accident.

In addition, plaintiff submitted a subsequent affidavit of defendant Chiarito, in which Chiarito averred that in late December 1993 or early January 1994, he had informed Marge or August Badali that a $950,000 default judgment had been entered against all of the defendants to plaintiff's lawsuit. However, in an explanatory affidavit submitted thereafter by defendants in rebuttal, Chiarito retracted that statement. In that explanatory affidavit, Chiarito asserted that plaintiff's counsel had prepared the affidavit in which that statement appeared, and that when Chiarito read the affidavit prior to signing it, he misunderstood the word "judgment" to refer to the November 18, 1993, order of default against him. Chiarito reiterated that he had only informed the Badali's of the November 18, 1993, default orders, that he never informed the Badali's of the $950,000 default judgment entered in December 1993, and that he himself was not aware of that judgment until December 1994.

On January 6, 1995, the trial court, pursuant to a hearing, granted defendants' section 2—1401 petition. At that time, the trial court stated as follows:

> "One of the elements in the [2—]1401 petition is due diligence, and based upon all that the court has read, all that the court has heard, [and] all the case law there's absolutely no doubt in the Court's mind that due diligence was never exercised in this case. *** However, one of the guiding principles [in] *** the administration of Section 2—1401 *** [is the] belief *** that the petition invokes the equitable powers of the Circuit Court which should prevent enforcement of a default judgment that would be unfair,

unjust, or unconscionable. The power to set aside a default permitted [*sic*] defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and for the furtherance of justice."

It is from that order that this appeal is taken.

## DISCUSSION

On appeal, plaintiff contends that the trial court abused its discretion in vacating the $950,000 default judgment against the defendants. In support, plaintiff argues that defendants failed to allege a meritorious defense to the allegations of his lawsuit; that defendants failed to exercise due diligence in presenting their defense prior to and after the entry of the default judgment; and that there was no equitable basis for vacating the default judgment.

■ Section 2—1401 of the Illinois Code of Civil Procedure provides a comprehensive statutory procedure that enables a litigant to obtain relief from final orders and judgments after the expiration of 30 days from the entry thereof. 735 ILCS 5/2—1401 (West 1994). A petition under section 2—1401 generally must set forth specific factual allegations that support the existence of a meritorious defense and the exercise of due diligence by the petitioner in presenting a defense to the lawsuit and in presenting his petition to vacate. *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 613 N.E.2d 737 (1993); *Kaput v. Hoey*, 124 Ill. 2d 370, 530 N.E.2d 230 (1988); *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 499 N.E.2d 1381 (1986); *Cohen v. Wood Brothers Steel Stamping Co.*, 227 Ill. App. 3d 354, 592 N.E.2d 59 (1991). The petitioner under section 2—1401 has the burden of establishing these elements by a preponderance of the evidence. *Klein*, 155 Ill. 2d 201, 613 N.E.2d 737; *Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381; *Cunningham v. Miller's General Insurance Co.*, 188 Ill. App. 3d 689, 544 N.E.2d 441 (1989). Whether a section 2—1401 petition should be granted depends on the facts and equities presented, and lies within the sound discretion of the trial court. *Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381; *Cunningham*, 188 Ill. App. 3d 689, 544 N.E.2d 441. As such, a reviewing court will not disturb a ruling on a section 2—1401 petition absent the finding of an abuse of discretion. *Klein*, 155 Ill. 2d 201, 613 N.E.2d 737; *Kaput*, 124 Ill. 2d 370, 530 N.E.2d 230; *Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381; *Cunningham*, 188 Ill. App. 3d 689, 544 N.E.2d 441.

■ We first address plaintiff's contention that in their section 2—1401 petition to vacate, defendants failed to allege a meritorious defense to the allegations in plaintiff's complaint. Plaintiff urges that the affidavits presented by defendants to establish their defense were inadequate and lacking in credibility and that, in any event,

plaintiff's counteraffidavits refuted the existence of a meritorious defense. We disagree. A petitioner under a section 2—1401 petition to vacate need only assert sufficient facts which, if believed by the trier of fact, would defeat the plaintiff's claim. *Cunningham*, 188 Ill. App. 3d 689, 544 N.E.2d 441. "Whether the defense of [the petitioner] would ultimately prevail at trial is not at issue in the section 2—1401 proceedings." *Bonanza International, Inc. v. Mar-Fil, Inc.*, 128 Ill. App. 3d 714, 719, 471 N.E.2d 221, 225 (1984); *Yorke v. Stineway Drug Co.*, 110 Ill. App. 3d 1009, 1014-15, 443 N.E.2d 644, 648 (1982) ("We believe that [petitioner's] allegations are sufficient to satisfy the requirements for the filing of a section 72 petition; whether [petitioner] ultimately recovers from [his opponent] is not here at issue").

■ In the instant case, we cannot find that the trial court abused its discretion in holding that defendants established the existence of a meritorious defense to the allegations of negligence and vicarious liability in plaintiff's complaint. As noted, defendants submitted the affidavits of defendants Chiarito, Lee, and of A&M president August Badali. Chiarito and Lee both denied any involvement in or knowledge of the plaintiff's accident. Lee additionally attested that the A&M time sheet and dispatch record attached to his affidavit reflected that he was more than five miles away from the scene of the alleged accident when it occurred. August Badali's affidavit corroborated Lee's statements concerning his time and dispatch records. In addition, August Badali's affidavit corroborated Chiarito's statements regarding his involvement insofar as Badali stated that Chiarito had informed him that he was not involved in and had no knowledge of the facts of that accident.

These affidavits, if believed, would suffice to defeat the plaintiff's allegations of negligence against Chiarito and Lee. Correspondingly, these affidavits, if believed, would also defeat plaintiff's allegation of negligence against A&M, whose alleged liability was derivative of that of Chiarito and Lee insofar as it was premised upon a theory of *respondeat superior.*

Plaintiff would contend, however, that defendants' affidavits are insufficient because they fail to deny that any A&M truck other than one driven by Chiarito or Lee was responsible for plaintiff's injuries. We disagree. In his complaint, plaintiff alleged solely that either Chiarito or Lee drove the truck that hit him, but he did not allege in the alternative that some other A&M truck driver may have been responsible for his accident. Therefore, if Chiarito, Lee and August Badali are to be believed, then plaintiff's derivative claim through Chiarito and Lee against A&M must also fail.

The plaintiff also urges that the averments in the affidavit of his trial counsel, Philip Corboy, of his detective, Dennis Fredrickson, and of defendant Chiarito were sufficient to refute the existence of a meritorious defense. However, as previously noted, whether a meritorious defense has been established does not depend upon whether a defense would ultimately prevail at trial (see *Yorke*, 110 Ill. App. 3d 1009, 443 N.E.2d 644; *Bonanza*, 128 Ill. App. 3d 714, 471 N.E.2d 221), but, rather, is determined by an examination of the section 2—1401 petition to ascertain whether, if believed by the trier of fact, the defense would defeat the plaintiff's claim. *Cunningham*, 188 Ill. App. 3d 689, 544 N.E.2d 441. Since it appears that the trial court in fact considered all of the circumstances set forth in defendants' affidavits, as set forth above, we cannot say that the trial court's vacatur was an abuse of its discretion. See *Yorke*, 110 Ill. App. 3d 1009, 443 N.E.2d 644.

Moreover, even if we were constrained to consider the plaintiff's counteraffidavits along with the defendants' affidavits in determining whether a meritorious defense was presented, our conclusion would not change. Although we do not here intend to comment on what the trier of fact might ultimately determine at trial, we note that, contrary to plaintiff's apparent contentions, the counteraffidavits that he presented are not preemptive. In that regard, although plaintiff's trial counsel averred that two eyewitnesses identified an A&M truck as being responsible for plaintiff's injuries, we also note that that averment was stricken without objection by the plaintiff, and, furthermore, plaintiff did not attempt to produce the further affidavit of any eyewitness, not even his own, to substantiate the events alleged in his complaint or to question the denials of Chiarito, Lee or of August Badali.

However, plaintiff points to the averments of Fredrickson, his investigator, as being preemptive, wherein Fredrickson alleged that Steve Badali, A&M vice-president, admitted to him that Chiarito and Lee were driving their trucks at the construction site at the time of plaintiff's injury. The plaintiff would contend that this alleged admission is sufficient to negate the existence of a meritorious defense. We disagree, since Steve Badali averred in his affidavit that he did not tell the investigator or anyone else that those men were at that construction site at the time of the occurrence, but only that they were there on occasion. Moreover, the presence of Chiarito and Lee at the time of the occurrence was specifically negated by their own affidavits, and, with respect to Lee, his absence was further corroborated by his time sheet and dispatch record.

■ Plaintiff next contends that the trial court erred in granting

defendants' section 2—1401 petition in light of defendants' failure to exercise due diligence in presenting a defense before the entry of the default judgment and in presenting their section 2—1401 petition 11 months after the entry of that judgment. In support, plaintiff cites to several Illinois decisions that have held that a defendant's reliance upon his insurance carrier, which fails to present a defense to a lawsuit, constitutes inexcusable negligence, and that vacatur on that basis is not justified. See *Chmielewski v. Marich*, 2 Ill. 2d 568, 119 N.E.2d 247 (1954); *Hunt v. General Improvements, Inc.*, 48 Ill. App. 3d 421, 362 N.E.2d 1143 (1977); *Burkitt v. Downey*, 102 Ill. App. 2d 373, 242 N.E.2d 901 (1968); *Bridson v. Maywood Cab Co.*, 79 Ill. App. 2d 295, 224 N.E.2d 572 (1967) (abstract of op.); *Wagner v. Sulka*, 336 Ill. App. 101, 82 N.E.2d 922 (1948); *Till v. Kara*, 22 Ill. App. 2d 502, 161 N.E.2d 363 (1959); *Gustafson v. Lundquist*, 334 Ill. App. 287, 79 N.E.2d 306 (1948); *Bonn v. Arth*, 331 Ill. App. 321, 73 N.E.2d 128 (1947). However, the decisions in *Chmielewski, Hunt, Bridson, Wagner, Till, Gustafson*, and *Bonn* are independently distinguishable. In each of them, unlike here, either the defaulted insured never forwarded the lawsuit papers to his insurer, or there was no evidence of the insured's efforts to contact the insurer to seek assurances that those papers were received or that a defense was being presented.

Moreover, while *Burkitt* comes closest to the plaintiff's position, even the facts there can be distinguished. There, the record was clear that plaintiff's counsel notified the defendant of the entry of default judgment the day after its entry. Here, not until 11 months following the entry of the default judgment did plaintiff begin to execute his judgment by issuing citations to discover assets to defendants in late 1994. Although plaintiff's counsel alleged that he notified defendants of the $950,000 default judgment, there is no indication in his affidavit as to when such notification occurred, nor is there any corroboration of whether or when such notice was sent in the affidavit of Karen Cozen, the legal assistant to plaintiff's counsel. On the other hand, the affidavits of the officers of A&M disclaim any knowledge or receipt of any notice of the entry of the judgment prior to the commencement of citation proceedings. See *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 190 N.E.2d 348 (1963) (delay in executing default judgment more than 30 days after its entry may cast a cloud on the proceedings); *Sterling Myers Ford Sales, Inc. v. Brown*, 33 Ill. App. 3d 619, 338 N.E.2d 149 (1975).

However, more overridingly, plaintiff's cases are inconsistent with the current trend in Illinois, which was been to relax the due diligence standard where necessary to prevent the unjust entry of default judgments and to effect substantial justice. Our supreme

court in *Airoom* recently rearticulated this trend, which traces back to the earlier decision of *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 190 N.E.2d 348 (1963), wherein the court recognized that a petition to vacate invokes the equitable powers of the court as justice and fairness require, even absent due diligence, to prevent the enforcement of defaults under unjust, unfair, or unconscionable circumstances. See *Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381 (power to vacate default and permit defendant day in court absent due diligence is based on substantial principles of right and wrong, and must be exercised to prevent injury and to further justice); *Cohen*, 227 Ill. App. 3d 354, 592 N.E.2d 59 (interests of justice and fairness require relaxation of due diligence requirement in favor of vacatur); *Zee Jay, Inc. v. Illinois Insurance Guaranty Fund*, 194 Ill. App. 3d 1098, 552 N.E.2d 1027 (1990) (even absent due diligence, section 2—1401 relief will be granted if in interests of justice and good conscience); *Bonanza*, 128 Ill. App. 3d 714, 471 N.E.2d 221 (despite absence of due diligence, vacatur of default judgment appropriate where equity, justice and good conscience require it). See also *Mieszkowski v. Norville*, 61 Ill. App. 2d 289, 209 N.E.2d 358 (1965) (stating that default determinations of parties' rights are harsh and drastic, should be made as a last resort only, and that whether to vacate is a question of fundamental fairness, not one of procedural exactitude).

Correspondingly, in keeping with this trend, there is a parallel line of insurance cases in Illinois that is more lenient than those cited by the plaintiff and that affirmatively asserts that an insured's good-faith reliance on his insurer will satisfy the requirement of due diligence in the interests of justice. See *Frostin v. Radick*, 78 Ill. App. 3d 352, 397 N.E.2d 208 (1979); *Sterling Myers Ford Sales, Inc. v. Brown*, 33 Ill. App. 3d 619, 338 N.E.2d 149 (1975); *Stehman v. Reichhold Chemicals, Inc.*, 57 Ill. App. 2d 40, 206 N.E.2d 299 (1965); *Boyle v. Veterans Hauling Line*, 29 Ill. App. 2d 235, 172 N.E.2d 512 (1961); *Dalton v. Alexander*, 10 Ill. App. 2d 273, 135 N.E.2d 101 (1956). This line of cases is more consistent with the above-discussed current tendency in Illinois to relax the due diligence standard where necessary to effect substantial justice in ruling on a petition to vacate a default judgment. See *Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381; *Cohen*, 227 Ill. App. 3d 354, 592 N.E.2d 59; *Elfman*, 27 Ill. 2d 609, 190 N.E.2d 348; *Zee Jay*, 194 Ill. App. 3d 1098, 552 N.E.2d 1027; *Bonanza*, 128 Ill. App. 3d 714, 471 N.E.2d 221.

In the instant case, there is no question that, under this analysis, the trial court was within its discretion in finding that vacatur was necessary to effect substantial justice. In that regard, here, defendants Lee and Chiarito promptly supplied defendant A&M with the legal

documents that they received, and they were assured that A&M's insurance carrier would take care of their defense. A&M's president, August Badali, stated in his affidavit that, as was his practice with all lawsuits against A&M, he forwarded all documents pertaining to plaintiff's suit to his insurance broker, Russ Cawthon, with the expectation that Cawthon would then forward those documents to CNA and that CNA would then provide a defense for the defendants. August Badali also averred that he made repeated inquiries to Cawthon regarding the handling of A&M's defense. He stated that Cawthon reassured him that the case was being handled as planned by CNA and, in particular, that the November 18, 1993, orders of default were being taken care of.

However, without the knowledge of those involved, Cawthon forwarded all pertinent documents to a CNA office in Reading, Pennsylvania, rather than to the appropriate office in Downers Grove, Illinois. It was not until November 1994 that the proper CNA office became aware of the plaintiff's lawsuit, 11 months after the entry of the $950,000 default judgment against the defendants, at which time it proceeded to file its petition for vacatur. These circumstances as disclosed by defendants' affidavits can well support a finding that defendants acted reasonably under the due diligence requirements of section 2—1401. See *Frostin*, 78 Ill. App. 3d at 354-55, 397 N.E.2d at 210 ("where a defendant forwards his complaint and summons to his insurer, then makes repeated inquiries into the progress of his defense, he has been sufficiently diligent in looking after his interest that he will be allowed to reopen a default judgment").

For the foregoing reasons, we find that the trial court did not abuse its discretion in granting defendants' section 2—1401 petition, and the judgment of the circuit court of Cook County is therefore affirmed.

Affirmed.

McNULTY and HOURIHANE, JJ., concur.